

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-20-2005

# Jackson v. Carroll

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-9012

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Jackson v. Carroll" (2005). *2005 Decisions.* Paper 79.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/79

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No: 04-9012

ROBERT W. JACKSON, III,

Appellant


v.

*THOMAS CARROLL, Warden

(*Amended - See Clerk's Order dated 1/6/05)


Appeal from the United States District Court
for the District of Delaware
(D.C. No. 01-cv-00552)
District Judge: Honorable Sue L. Robinson

Argued: October 28, 2005

Before: McKEE, RENDELL and GREENBERG, Circuit Judges.

(Filed: December 20, 2005)


THOMAS A. FOLEY, ESQ. (Argued)
1326 King Street
Wilmington, DE 19801

JOHN S. MALIK, ESQ. (Argued)
100 East 14th Street
Wilmington, DE 19801
Attorneys for Appellant

THOMAS E. BROWN (Argued)
Department of Justice
820 North French Street
Carvel Office Building

Wilmington, DE 19801
Attorney for Appellee

OPINION

McKEE, Circuit Judge

Robert W. Jackson appeals the District Court's denial of his petition for habeas relief. He argues that his attorneys were ineffective at trial because they did not have enough time to adequately prepare a defense, and because they failed to object to certain trial testimony. He also argues that he was denied a fair trial as a result of the prosecution's failure to disclose an implicit promise of immunity to a prosecution witness.

After denying relief, the District Court explained its grant of a Certificate of Appealability ("COA") as follows: "A certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) is granted, the court finding that this is a capital case under 11 Del. C. § 4202 and that there are ambiguities in the application of *Ring v. Arizona,* 536 U.S. 584 (2002), to the facts at bar."[1] However, Jackson's brief on appeal neither cites nor argues *Ring*. Moreover, in response to the defendant's request for clarification, the District Court stated: "The court did not identify specific issues for appeal because of its understanding that, consistent with 28 U.S.C. § 2266(c)(1)(A), the Third Circuit may review the entire decision of this Court, regardless of this Court's determination under 28 U.S.C. § 2253(c)(2)." Given the confusion surrounding this COA, we would normally vacate the District Court's order and remand for further consideration of the propriety of issuing

---

[1] In *Ring*, the Supreme Court held that the Sixth Amendment right to trial by jury requires that a jury find beyond a reasonable any fact that would subject the defendant to the death penalty as opposed to life imprisonment. *Ring,* 536 U.S. at 589.

a COA. *See Szuchon v. Lehman*, 273 F.3d 399, 311 n.5 (3d Cir. 2001). However, inasmuch as the death penalty is involved, we think it more prudent to vacate the COA and consider Jackson's Notice of Appeal as a request for a COA. *Id.*, *see also* L.A.R. 111.3 ©). Viewing Jackson's Notice of Appeal in that light, for the reasons set forth below, we will deny the request for a COA.[2]

## I.

Because we write primarily for the parties, we recite only the facts and procedural history that are necessary for the disposition of this appeal. During post-conviction proceedings, the state court held hearings on Jackson's claims of ineffective assistance of counsel. At the August 21, 1998 hearing, David A. Ruhnke, a New Jersey attorney with extensive capital trial experience, provided expert testimony pertaining to the conduct of trial counsel, and concluded that it fell below that which is appropriate for a capital case. He opined that a reasonably competent attorney would need at least six months to prepare in a capital case, should inspect the physical evidence and verify any forensic results with independent experts, and should hire a private investigator to assist with witness interviews. Ruhnke believed there had been multiple failures on trial counsel's part and stated that he did not think an attorney could provide effective assistance in the time Jackson's trial counsel had to prepare.

Defense attorney Levinson explained that he did not ask for a continuance because he felt it was not necessary, particularly because O'Connell and other attorneys had been preparing the case for trial. He also testified that he felt comfortable, in light of his trial experience, cross-

---

[2] Our review is governed by 28 U.S.C. § 2253. Thus, Jackson is entitled to a COA "only if [he] has made a substantial showing of the denial of a constitutional right[.]"

3

examining the state's forensic experts even though he had not retained independent experts to assist him. O'Connell testified that although he would have preferred additional time to prepare, he had adequate time to do so.

## II.

In order for us to issue a COA, Jackson must "make a substantial showing of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). He attempts to do so by raising two issues on appeal. Each is considered separately.

## A.

Jackson argues that his Sixth Amendment rights were violated as a result of his trial counsel's prejudicially ineffective assistance. He rests this argument on the time his attorneys were given to prepare for trial, and on their failure to object to unresponsive testimony of a prosecution witness.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), counsel's performance must fall "below an objective standard of reasonableness." *Id*. at 688. However, Jackson must also show that "there is a reasonable probability that, but for counsel's unprofessional efforts, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Relying on *United States v. Cronic*, 466 U.S. 648 (1984), Jackson argues that Levinson's appointment sixteen days before jury selection was *per se* unreasonable. According to Jackson, the brief time afforded Levinson precluded him from thoroughly investigating this case and obtaining independent forensic testing. Jackson claims that such testing would have created a reasonable probability of a different result.

4

However, Jackson does not even try to tell us how anything would have been different if Levinson had more time to prepare. In *Cronic*, the Court recognized that although a prisoner alleging ineffective assistance of counsel usually has the burden of proving that counsel's performance was unreasonable and that prejudice resulted, "[t]here are . . . circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658. Prejudice will therefore be presumed

> if the accused is denied counsel at a critical stage of his trial [or] ....
> if counsel entirely fails to subject the prosecution's case to
> meaningful adversarial testing [or] ... when although counsel is
> available to assist the accused during trial, the likelihood that any
> lawyer, even a fully competent one, could provide effective
> assistance is so small that a presumption of prejudice is appropriate
> without inquiry into the actual conduct of the trial.

*Id.* at 559-60.

However, before we will presume prejudice under *Cronic*, there must be a complete failure of counsel. "Here, respondent's argument is not that his counsel failed to oppose the prosecution . . . as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this difference is not of degree but of kind." *Bell v. Cone*, 535 U.S. 685, 697 (2002). We therefore agree with the District Court's conclusion that *Cronic* does not apply here.

Thus, even if Jackson were able to show that counsel's performance was lacking because of insufficient time to prepare, he would not be entitled to relief under *Strickland* unless he could demonstrate that things would likely have been different if counsel had additional time. He has completely failed to satisfy that burden. As noted above, the core of his argument is that he was prejudiced by counsel's failure to conduct a complete and thorough investigation and

5

independently test all physical evidence. Appellant's Br. at 31. He asserts that counsel could have performed appropriate forensic tests if given more time, but he is not even able to allege that the results of any such testing would have been favorable, and nothing on this record suggests it would have been.

Moreover, Jackson's defense counsel never requested a continuance, and both counsel testified that they thought they had enough time to prepare. In fact, although he is understandably not anxious to admit it here, before the Delaware Supreme Court, Jackson conceded that he was "hard pressed to articulate what exactly trial counsel would have discovered if they had requested and been granted funds for independent forensic tests of the physical evidence and such tests had been conducted before trial." *Jackson v. State*, 770 A.2d 506, 513 (Del. 1994).

The District Court did provide funds for Jackson to retain a forensic expert, but this expert – Dr. Hubbard – did not reach any conclusion favorable to Jackson. *Jackson v. Carroll*, 2004 WL 1192650 at *14 (D. Del. 2000). Although he complains that the District Court's award of funds was "too little, too late," he offers nothing else to satisfy the prejudice prong of *Strickland*.

Although we are troubled by the brief amount of time afforded trial counsel and what appears to be a rather rigid adherence to expediting a capital case at the risk of affording inadequate time to prepare, there is nothing here to suggest that Jackson was prejudiced by the process other than his protests and speculative argument to that effect. That is not enough to meet the second prong of *Strickland* even if we assume that counsel was somehow derelict in not performing independent testing.

6

**B.**

The second part of Jackson's ineffective assistance argument centers on counsel's failure to object to a non-responsive answer of Anthony Lachette. When the prosecutor asked Lachette: "What were your thoughts when you and the defendant were talking about doing a burglary, a house burglary?" J.A. 181; Lachette answered: "I originally wasn't going to do it. It was something he did, I don't want to say as a habit, but it was something that he often did." J.A. 182. Jackson argues that trial counsel were ineffective for not requesting a mistrial because Lachette's "response" was tantamount to inadmissible character evidence.

In rejecting this claim, the District Court stated:

> A showing of actual prejudice in this case would require a showing that an objection would likely have resulted in the ordering of a mistrial by the Superior Court. While evidence of petitioner's alleged propensity to commit burglary should have been excluded, where as here, it resulted from nonresponsive testimony and was not further referenced to the jury, it is not probable that a mistrial would have been ordered where at most a curative instruction would have sufficed. Consequently, because the Delaware Supreme Court found the absence of both unreasonable conduct by petitioner's trial counsel and prejudice, the Delaware Supreme Court's denial of petitioner's ineffective assistance of counsel claim was not objectively unreasonable.

*Jackson v. Carroll*, 2004 WL 1192650 at *15. We agree.[3] Thus, this claim fails to satisfy the substantial showing required by §2253.

In addition, even if both instances of alleged ineffectiveness are viewed cumulatively as

---

[3] We realize, of course, that skilled defense counsel may not have objected or requested a curative instruction in order to avoid highlighting Lachette's testimony. However, we can not speculate that defense counsel was motivated by such tactical considerations in not requesting a mistrial. Rather, we simply conclude that Lachette's testimony did not warrant a mistrial, and defense counsel can not be faulted for failing to make a request that was not likely to be granted.

discussed in *Frey v. Fulcomer*, 974 F.2d 348, 361 n.12 (3d Cir. 1992), we would still conclude that Jackson can not establish the prejudice that is required under *Strickland*, or § 2253.

**C.**

Jackson's second claim is that he was denied his Sixth Amendment right to a fair trial as a result of the prosecution's failure to disclose an implicit promise of immunity to Johnson under *Brady v. Maryland*, 373 U.S. 83 (1963).

In order to show a *Brady* violation, Jackson must show 1) that the evidence was favorable to him, 2) that the evidence was suppressed by the state and 3) that prejudice resulted. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). As the Supreme Court explained in *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

Given the totality of the evidence here, and the aggressive cross-examination Johnson was subjected to, we do not believe that Jackson has demonstrated a "reasonable probability of a different result" *id*., if the jury had known that Johnson was expecting favorable consideration from the government in return for his testimony. Although the Delaware Supreme Court found that there was an implicit promise which the prosecution should have revealed to Jackson and that the failure to disclose it was "troubling,"and "offensive," it did not find that this evidence was sufficient to undermine confidence in the verdict. *Jackson v. State*, 770 A.2d at 514-15. The court so concluded because of the overwhelming evidence of Jackson's guilt, not least of which was the evidence corroborating Johnson's testimony. The court explained that "[i]t is difficult to imagine a more powerfully persuasive set of corroborating circumstances" than Jackson's letter

8

to Johnson and the evidence indicating that Jackson sent it. *Id*. at 517. During oral argument on appeal, defense counsel attempted to furnish an innocent explanation of the letter Jackson sent. However, the same arguments could have been made to the jury even absent knowledge of Johnson's belief regarding favorable treatment. Moreover, the possibility that the jury may have viewed Johnson though more jaundiced eyes if it had known of his belief, is speculative at best.[4]

Jackson also argues that the Delaware Supreme Court misapplied *Kyles*. He claims that the court relied on improper factors outside the record, including Jackson's lack of an alibi and the shoe print expert's report.[5] He further claims that while there may be overwhelming evidence of his involvement in the burglary/robbery, the evidence that he murdered Girardi is far more tenuous and Johnson's testimony was therefore more important than the Delaware Supreme Court and District Court recognized. Jackson maintains that despite the evidence corroborating Johnson's testimony "there still exists the real possibility that Andre Johnson (a seasoned inmate) fabricated the true import of the letter." Appellant's Br. at 46.

Omitting all consideration of the alibi and shoe print issues, and conceding *arguendo* the importance of Johnson's testimony, Jackson has nevertheless provided no support for his contention that there is a "real possibility" that Johnson fabricated the import of the letter, and as we have already suggested, any innocent explanations he now provides could have been argued

---

[4] Given the common sense that we ask jurors to bring to their deliberations, it strains credulity to suggest that the jury did not believe that Johnson thought he was going to get something favorable for his testimony in the first place.

[5] We are perplexed by the Delaware Supreme Court's suggestion that the absence of an alibi could somehow be relevant to Jackson's guilt. It is axiomatic that a defendant does not have to prove his innocense, and Jackson was therefore under no obligation to present an alibi. Accordingly, we can infer nothing from his failure to introduce evidence of an alibi.

to the jury just as forcefully whether or not the jury knew of Johnson's expectation of reward for his testimony. The fact that Johnson had a motive to lie does not mean that he did lie. Jackson has simply not satisfied his burden of showing that a different outcome would have been likely had the jury had more information about his motive to lie. Thus, Jackson fails to make a substantial showing that he was denied his Sixth amendment right to a fair trial.

## IV. Conclusion

For the reasons given above, we find that Jackson has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253. As a result, we cannot issue a certificate of appealability.