needs time."); *White v. Ragen*, 324 U.S. 760, 764 (1945) ("[I]t is a denial of the accused's constitutional right to a fair trial to force him to trial with such expedition as to deprive him of the effective aid and assistance of counsel."). While the Constitution does not specify the period that must intervene between the required appointment of counsel and trial, the Supreme Court has recognized that

> the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel.

*Avery v. Alabama*, 308 U.S. 444, 446 (1940). As Justice Harlan stated in dissent in *Chambers v. Maroney*, 399 U.S. 42 (1975), "[w]here counsel has no acquaintance with the facts of the case and no opportunity to plan a defense, the result is that the defendant is effectively denied his constitutional right to assistance of counsel." *Id.* at 59 (Harlan, J., concurring in part, dissenting in part). This is precisely what happened in Hunt's case.

For these reasons, we **REVERSE** the judgment of the district court and **REMAND** the case with instructions to issue a writ of habeas corpus unless Hunt is granted a new trial within a time to be fixed by the district court.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0275P (6th Cir.)
File Name: 01a0275p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

WAYNE HUNT,
    *Petitioner-Appellant,*

    *v.*                                        No. 99-4308

BETTY MITCHELL, Warden,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 98-00988—Patricia A. Gaughan, District Judge.

Argued: June 13, 2001

Decided and Filed: August 22, 2001

Before: RYAN and COLE, Circuit Judges; MARBLEY,
District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Thomas R. Wetterer, Jr., PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Appellant. Jonathan R.

_____

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

Fulkerson, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellee. **ON BRIEF:** Thomas R. Wetterer, Jr., PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Appellant. Jonathan R. Fulkerson, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellee.

———————————

**OPINION**

———————————

R. GUY COLE, JR., Circuit Judge. Petitioner-Appellant Wayne Hunt was convicted in Ohio state court of felonious assault and domestic violence and was sentenced to concurrent terms of imprisonment totaling eleven to fifteen years. The state trial court appointed counsel for Hunt on the day trial was to commence and refused to grant counsel ten minutes to consult with Hunt before proceeding to voir dire. On direct appeal, a divided panel of the Ohio Court of Appeals rejected Hunt's claim of "per se" ineffective assistance of trial counsel under *United States v. Cronic*, 466 U.S. 648 (1984), and the Ohio Supreme Court denied Hunt leave to appeal. Having exhausted his state remedies, Hunt filed an application for a writ of habeas corpus in federal district court in the Northern District of Ohio, which denied Hunt's habeas petition. We conclude that Hunt's petition for habeas relief must be granted because the Ohio Court of Appeals unreasonably applied clearly established Supreme Court precedent in its review of Hunt's claim. Therefore, we **REVERSE** the judgment of the district court.

to defraud. *When there is no reason to dispute the underlying historical facts*, the period of 25 days to consider the question whether those facts justify an inference of criminal intent is not so short that it even arguably justifies a presumption that no lawyer could provide the respondent with the effective assistance of counsel required by the Constitution.

*Cronic*, 466 U.S. at 664-665 (emphasis added). Here, by comparison, Hunt's counsel had *every reason* to dispute the underlying historical facts of the case. Indeed, Hunt's sole line of defense was to challenge the prosecution's version of events, as was illustrated by his lawyer's cross-examination of the police witnesses regarding whether they saw Hunt holding a knife or assaulting his wife. No one can say what additional factual issues Hunt's counsel would have raised had he had an opportunity to consult with his client prior to trial.

While it is true that Hunt's trial did not involve a menacing mob or the threat of execution looming over the Scottsboro Boys in *Powell*, this is one of those rare cases in which "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 466 U.S. at 659-60. The circumstances surrounding the appointment of Hunt's counsel were sufficiently egregious as to warrant a presumption of ineffectiveness under *Cronic*. In holding otherwise, the Ohio Court of Appeals unreasonably applied clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1).

### III. CONCLUSION

The Supreme Court long ago acknowledged that the duty to provide counsel "is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." *Powell*, 287 U.S. at 71. *See also Hawk v. Olson*, 326 U.S. 271, 278 (1945) ("The defendant needs counsel and counsel

court therefore gave Hunt a choice: he could either waive his right to a speedy trial and receive more time for his counsel to prepare, or he could proceed immediately to trial that same afternoon. As previously discussed, the court refused to give Hunt's counsel ten minutes to consult with Hunt regarding his options, but instead asked Hunt point-blank whether he wished to start trial, to which Hunt responded, "Sure." Immediately thereafter, Hunt changed out of his prison clothes and the court began to impanel a jury.

The Supreme Court has stated that it is "intolerable" to force a criminal defendant to surrender one constitutional right in order to assert another. *See Simmons v. United States*, 390 U.S. 377, 394 (1968). While Hunt's statutory right to a speedy trial under Ohio law may not equate precisely to his constitutional right to a speedy trial under the Sixth Amendment, *cf. United States v. O'Dell*, 237 F.3d 655, 666-67 (6th Cir. 2001) (refusing to equate federal statutory right to a speedy trial under the Speedy Trial Act with Sixth Amendment right to speedy trial), the element of coerced choice decried by the Court in *Simmons* is nevertheless present here. When Hunt refused to waive his right to a speedy trial, the trial court effectively forced him to go to trial with an unprepared attorney.

Hunt's lawyer's lack of time to prepare was particularly prejudicial to Hunt in light of the fact-intensive nature of the government's case. In *Cronic*, the Supreme Court found that defense counsel's limited preparation time was of minimal significance in light of the charges at issue in that case. The Court stated:

> Most of the Government's case consisted merely of establishing transactions between the two banks. A competent attorney would have no reason to question the authenticity, accuracy, or relevance of this evidence – there could be no dispute that these transactions actually occurred. As respondent appears to recognize, the only bona fide jury issue open to competent defense counsel on these facts was whether respondent acted with intent

## I. BACKGROUND

Hunt's convictions resulted from an altercation that occurred on the evening of April 21, 1995.[1] According to the evidence offered by the prosecution at trial, Hunt returned home from work at five o'clock that afternoon, slept for a while, and then began drinking. At approximately eleven o'clock that evening, he went next door to confront his wife Joyce, four months pregnant at the time, who was visiting a friend, Sheila. Hunt allegedly brandished two knives at the women and shouted racial slurs at Sheila. At one point, Joyce apparently gained control of the knives and put them under her thighs on the couch. When Sheila's niece entered the house, Hunt allegedly grabbed the knives again, cutting his wife's hand in the process. The altercation moved onto the front porch, where, according to the government, Hunt held one knife to Joyce's throat and one to her stomach, threatening to kill her and her unborn baby. Hunt was distracted when Sheila's niece came onto the porch, allowing Joyce to free herself and escape into Sheila's house. Following an unsuccessful attempt to cut the phone line to Sheila's house, Hunt returned to his house. Two Cleveland police officers arrived on the scene within minutes, observed that Joyce was injured, and obtained a description of Hunt. Shortly thereafter, a third officer arrived at the scene. Hunt had returned to Sheila's house by that point and was arguing with his wife. Although Hunt was unarmed, he became irate and resisted being arrested. The officers ultimately used pepper spray to subdue Hunt and leg shackles and handcuffs to get him into the police car.

Upon his arrest that night, Hunt was incarcerated and remained in jail until his indictment on July 17, 1995, eighty-seven days later. The indictment charged Hunt with one count of felonious assault with three specifications for

---

[1] The facts of the government's case against Hunt are set out in full in the opinion of the Ohio Court of Appeals, *see State v. Hunt*, No. 69658, 1996 WL 502151, at *1 (Ohio Ct. App. Sep. 5, 1996), and are summarized here.

violence and one specification for a prior aggravated felony conviction, and one count of domestic violence with four specifications for violence. On July 19, 1995, eighty-nine days after his arrest, Hunt was arraigned in the Court of Common Pleas of Cuyahoga County, Ohio, and was appointed an attorney. Immediately after Hunt's arraignment, the following exchange took place between the trial court judge, Hunt, and Hunt's appointed counsel, Mr. King:

Court:   Mr. Hunt, your file was just brought to the court's attention today and we have to start trial today because apparently this is your 90th day of incarceration.[2] So if you want to go to trial, that's fine. I'll have them take you downstairs and have you changed into civilian clothes. In the meantime we'll have the jury brought up and we'll start trial or you can waive time if you want more time to consult with your lawyer to prepare your case. Those are your two options.

King:    We just began discussions. I hope we could have another ten minutes?

Court:   There is no ten minutes. He's got to be taken downstairs. It's pretty straight forward. He's gone through the drill before. He's also gone to trial in the past, so he understands what is going on. Whatever you want to do.

King:    We might be able to dispose of a jury if I were to have ten minutes right now.

Court:   I have to know that if he wants to work out a plea it will have to be after a waiver. I'm not going to be in a position where the jurors are let go at three o'clock. If you want to work out a plea, that's fine, and you're welcome to do so.

---

[2]The court mistakenly thought it was the ninetieth day instead of the eighty-ninth day.

counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland v. Washington*, 466 U.S. 668, 691 (1984); *see also Geders v. United States*, 425 U.S. 80, 88-89 (1976) (holding that the right to counsel encompasses the right to confer with one's lawyer). Because Hunt was denied the opportunity to confer with counsel during the critical pre-trial stage of the State's proceedings against him, he was entitled to a presumption of ineffective assistance under *Cronic*. The decision of the Ohio Court of Appeals to the contrary was an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1).

### (b)  Egregious circumstances

The egregious circumstances surrounding the trial court's appointment of counsel also justified a presumption of ineffective assistance under *Cronic*. As Judge Patton pointed out in dissent in the Ohio Court of Appeals, Hunt's case apparently "fell through the cracks of the system, forgotten until just before [Hunt's] speedy trial rights might be violated." *Hunt*, 1996 WL 502151, at *7 (Patton, J., dissenting). Indeed, following his arrest, Hunt languished in jail for eighty-seven days before the grand jury returned an indictment charging him with felonious assault and domestic violence. On his eighty-ninth day in jail, the prosecutor's office apparently realized that it needed to take quick action to bring Hunt to trial, else his indictment be dismissed under Ohio's speedy trial statute. *See* OHIO REV. CODE § 2945.71(C)(2), (E) (requiring person charged with a felony and held in jail in lieu of bail be brought to trial within ninety days after his arrest). The trial court hastily arraigned Hunt and appointed counsel. Unfortunately, the judge believed that Hunt had reached his ninetieth day of confinement without bail (where, in fact, it was his eighty-ninth day), and thus mistakenly concluded that trial must commence at once. The

*Mitchell*, 2001 WL 818230, at *10.  In *Mitchell*, we found that the defendant's lawyer had consulted with his client for a total of six minutes during the seven-month period prior to the start of trial and had been suspended from practicing law during the one-month period immediately preceding trial. *See id.* at *9.  On these facts, we found that defendant's counsel had been totally absent during a critical stage of the proceedings and concluded that the state court's decision to the contrary was an unreasonable application of clearly established Supreme Court precedent.  *See id.*

    The facts of this case are even more egregious than the facts of *Mitchell*.  Indeed, here, there is no indication that Hunt consulted with his lawyer *even once* before the start of voir dire.  Hunt's counsel was not even afforded ten minutes to confer with his client to discuss the possibility of entering into a plea agreement.  As a consequence of the trial court's haste to begin trial, counsel was required to proceed to voir dire without ever discussing the case with his client and without conducting any discovery or independent investigation of the facts.  While we recognize that broad discretion must be granted trial courts on matters of continuances, such "an unreasonable and arbitrary insistence upon expeditiousness in the face of a justifiable request for a delay violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (internal citations omitted).[4]

    In assessing claims of ineffective assistance of counsel, the Supreme Court has repeatedly emphasized the importance of pre-trial consultation between attorney and client.  For example, the Court has stated that "[t]he reasonableness of

---

[4] The first real opportunity Hunt's counsel had to consult with his client came three days *after* trial had commenced, when the trial court granted *the prosecution* a ten-day continuance so that it could locate its star witness, Hunt's wife.  By that point in the proceedings, Hunt's counsel had already participated in the jury-empaneling process, had given an opening statement, and had cross-examined three prosecution witnesses. We cannot agree with the State, therefore, that the trial court's grant of the government's request for a ten-day continuance in any sense cured Hunt's lack of counsel during the critical pre-trial stage of his case.

---

If he wants -- he's indicating no for the record.  If you want to waive time, to have more time to prepare for trial, that is your right and your option.

Hunt:    No.

Court:   You want to start trial?

Hunt:    Sure.

Court:   Have him taken down.

King:    If I could have ten minutes to talk to him we may not need any jury or clothes.

Court:   I called over to your office as soon as we got this case.  He said he wanted to enter a plea.  Once I have the jury up here we are going forward with the trial.

    Voir dire began that afternoon and the trial commenced the next day. Before giving an opening statement, Hunt's counsel expressed his misgivings about proceeding without sufficient opportunity to consult with his client or time to prepare an adequate defense.  In response to the trial judge's inquiry regarding Hunt's willingness to plead guilty, King stated:

    I did discuss plea arrangements with the defendant.  He has made his choice.  That is his decision, but [I] also discussed the fact that this is a last minute case.  I got it yesterday.  I know that prosecutor is in somewhat of the same boat.  Their office generates the file.  What I did point out to Mr. Hunt is, if he were willing to waive time on this, I could be more prepared than I am at this time.  He has chosen to go forward on that, on the final hour, and very quickly for me, and I want the Court to be aware of that.  Thank you.

Following opening statements, the State presented the testimony of the three police officers, subject to limited cross-

examination by Hunt's counsel. The trial judge then granted a continuance for ten days so the prosecution could locate Hunt's wife, Joyce, the State's star witness. The trial recommenced on July 31, 1995, and ended later the same day. The jury returned the next day with convictions on both counts. On September 5, 1995, Hunt was sentenced to eleven to fifteen years on Count One and three to five years on Count Two, with the sentences to be served concurrently.

With one judge dissenting, a panel of the Ohio Court of Appeals affirmed Hunt's convictions and sentences on September 15, 1996, *see State v. Hunt*, No. 69658, 1996 WL 502151 (Ohio Ct. App. Sept. 5, 1996), and the Ohio Supreme Court denied Hunt's petition for leave to appeal on January 15, 1997, *see State v. Hunt*, 674 N.E.2d 371 (Ohio 1997). Hunt then filed the instant petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio on January 12, 1998. The matter was referred to a magistrate judge who recommended the denial of Hunt's petition. The district court accepted the magistrate judge's recommendation and denied the writ on October 6, 1999. The district court did not grant a certificate of appealability ("COA"), nor did this Court on first hearing. However, upon rehearing, a panel of this Court granted a COA to determine "whether petitioner was denied his Sixth Amendment right to the effective assistance of counsel due to the appointment of an attorney on the day of trial." That is the sole question presented to this Court on appeal. *See Searcy v. Carter*, 246 F.3d 515, 518 (6th Cir. 2001) (stating that federal appellate court's review of habeas petition is limited to the issues specified in the COA under AEDPA).

## II.  DISCUSSION

### A.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which amended 28 U.S.C. § 2254, applies to all habeas petitions filed after April 24, 1996, the effective date of the Act. Because Hunt's petition for habeas relief was filed after

unprepared to represent appellant or that appellant was being denied his right to effective assistance of counsel by the proceedings." *Hunt*, 1996 WL 502151, at *3. The Ohio court's presumed-prejudice analysis under *Cronic* appears to have turned, therefore, on Hunt's alleged waiver of his objections in the court below. By definition, however, a per se violation of a defendant's right to effective assistance of counsel does not require the defendant to preserve the error below. *See, e.g., Powell*, 287 U.S. at 57-58 (holding that under the circumstances, defendants were not accorded right to counsel in any substantial sense, even though defendants did not formally object to last-minute appointment of counsel by state trial judge). Moreover, the record reflects that defense counsel *did* inform the court that he needed more time consult with his client. Thus, the reason relied upon by the Ohio court in rejecting Hunt's presumed-prejudice argument under *Cronic* is both factually inaccurate and legally irrelevant.

### 2.  Hunt was entitled to a presumption of ineffectiveness

Had the Ohio Court of Appeals properly applied *Cronic* to the facts of this case, it could not reasonably have arrived at the decision it reached.

#### (a)  Denial of counsel at a "critical stage"

First, the undisputed facts of this case reveal that Hunt was denied the presence of counsel during a "critical stage" of the prosecution. As we recently explained:

> The Supreme Court has decided several cases that make clear that the period between appointment of counsel and the start of trial is indeed a "critical stage" for Sixth Amendment purposes. . . . The pre-trial period constitutes a "critical period" because it encompasses counsel's constitutionally imposed duty to investigate the case. . . . [W]ithout pre-trial consultation with the defendant, trial counsel cannot fulfill his or her duty to investigate.

ineffective assistance of counsel claim should be judged.[3] *See Hunt*, 1996 WL 502151, at *3. The Ohio court unreasonably applied the holding of *Cronic* to the facts of Hunt's case, however, and, as a result, erred in concluding that Hunt was not entitled to a presumption of ineffectiveness.

### 1. The Ohio court misapplied *Cronic*

As previously discussed, the Court in *Cronic* identified certain situations in which the circumstances of trial are "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658. In such situations, prejudice to the defendant will be presumed. One such situation is where the defendant is denied the presence of counsel at a "critical stage" of the prosecution. *Cronic*, 466 U.S. at 659. Another is where the circumstances surrounding the appointment of counsel are so egregious that even a fully competent lawyer is presumed to have rendered constitutionally ineffective assistance. *Id.* at 659-61 (discussing the last-minute appointment of defense counsel in *Powell* as an example of such a case).

In attempting to apply *Cronic* to the case at bar, the Ohio Court of Appeals failed to consider whether Hunt had been denied the presence of counsel during a "critical stage" of the prosecution. Nor did the court of appeals look to the circumstances surrounding the appointment of Hunt's counsel to determine whether it was unlikely that even a fully competent lawyer could have provided effective assistance. Rather, in applying *Cronic*, the court of appeals focused on the "fact" that Hunt had failed to preserve his objection to the trial court's last-minute appointment of counsel. The Ohio court stated that neither Hunt nor his attorney "objected to the alacrity with which the trial commenced," and further stated that "there were no statements either that counsel was

---

[3] Inasmuch as the Ohio Court of Appeals was the last state court to address the merits of Hunt's appeal, it is the decision of that court that we must analyze in light of the principles articulated by the Supreme Court in *Williams*.

the effective date, AEDPA governs our review of this case. Under AEDPA, habeas relief may not be granted with respect to any claim adjudicated on the merits in state court unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The federal court must presume that all determinations of factual issues made by the state court are correct unless the petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Whether Hunt was deprived of his right to effective assistance of counsel is a mixed question of law and fact that we review de novo. *Olden v. United States*, 224 F.3d 561, 565 (6th Cir. 2000). On federal habeas review, we apply the "unreasonable application" prong of § 2254(d)(1) to mixed questions of law and fact. *Harpster v. Ohio*, 128 F.3d 322, 327 (6th Cir. 1997). In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court discussed the independent meaning conveyed by the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) and explained the distinct analysis that must be performed under each clause. *See id.* at 410. According to the Court, a state court "unreasonably appli[es]" clearly established Supreme Court precedent when it correctly identifies the governing legal principle in the case, yet unreasonably applies that principle to the facts of the defendant's case. *Id.* at 413. A state court also unreasonably applies Supreme Court precedent when it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407 (approving of the Fourth

Circuit's formulation of § 2254(d)(1)). The *Williams* Court cautioned, however, that a federal habeas court may not overturn a state court's decision simply because it concludes that a state court applied Supreme Court precedent incorrectly. *See id.* at 411. Rather, the state court's application of Supreme Court precedent must also be unreasonable. *Id.*

### B. "Clearly Established" Federal Law

Under AEDPA, we must first ask whether the rule of law Hunt seeks to invoke was "clearly established" at the time his state court convictions became final. *See id.* at 390. Hunt argues that he was denied his Sixth Amendment right to counsel because his lawyer was appointed minutes before trial and, as a result, had no opportunity to consult with Hunt or prepare a defense. Under such circumstances, Hunt contends, prejudice must be presumed without inquiry into his lawyer's actual performance at trial. Hunt cites the Supreme Court's decisions in *Powell v. Alabama*, 287 U.S. 45 (1932), and *United States v. Cronic*, 466 U.S. 648 (1984), for support of this "per se" rule of ineffective assistance of counsel.

In *Cronic*, the Supreme court held that a defendant's conviction must be automatically reversed without any specific showing of prejudice "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." 466 U.S. at 659 n.25. The Court further observed that there may be "some occasions when, although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of trial." *Id.* at 659-60. The Court referred to the last-minute appointment of defense counsel in *Powell* as an example of such an occasion. *See id.* at 660-61.

In light of the Supreme Court's decisions in *Cronic* and *Powell*, there is no question that the rule of presumed ineffectiveness that Hunt seeks to invoke was clearly established at the time his state court convictions became

final. Indeed, this Court has recently stated as much in a case remarkably similar to the one at bar. In *Mitchell v. Mason*, __ F.3d __, 2001 WL 818230 (6th Cir. July 12, 2001), the habeas petitioner argued that he was entitled to a presumption of ineffective assistance of counsel where the record indicated that his trial counsel had consulted with him for a mere six minutes prior to the start of trial. Before analyzing the merits of the petitioner's Sixth Amendment claim, the Court addressed the "threshold question" of whether the petitioner sought to apply a rule of law that was "clearly established" at the time his state court conviction became final. *See Mitchell*, 2001 WL 818230, at *7. The Court stated:

> [W]e easily reach the conclusion that it was clearly established by the Supreme Court, as of the time that Mitchell's case was decided in the state court, that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice.

*Id.* (quotation marks and citation omitted). We, too, easily conclude that *Cronic*'s rule of presumed prejudice was clearly established at the time Hunt's convictions became final. Indeed, as we noted in *Mitchell*, the Supreme Court has repeatedly confirmed the vitality of this rule ever since *Cronic* was handed down in 1984. *See, e.g., Williams*, 529 U.S. at 391 (noting that "there are a few situations in which prejudice may be presumed"); *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000) (quoting *Cronic*, 488 U.S. at 659).

Because there was clearly established Supreme Court precedent applicable to Hunt's claim of ineffective assistance of counsel, we must next ask whether the decision of Ohio Court of Appeals rejecting Hunt's ineffective assistance claim was "an unreasonable application of" that precedent. *See* 28 U.S.C. § 2254(d)(1). We conclude that it was.

### C. *Cronic* and Presumed Ineffectiveness

As in *Mitchell*, the state appeals court in Hunt's case properly acknowledged that the Supreme Court's decision in *Cronic* provided the legal standards by which Hunt's