NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0028n.06
Filed: January 9, 2007

No. 05-3260

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| WILLIE JOHNSON, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MARGARET BRADSHAW, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: DAUGHTREY and GIBBONS, Circuit Judges; EDMUNDS, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff-appellant, Willie Johnson, was convicted in an Ohio state court of multiple counts of child rape, rape, gross sexual imposition, and intimidation and sentenced to life in prison. After pursuing the appropriate appellate channels in the Ohio state courts without success, Johnson filed a petition for habeas corpus relief from the state judgment with the federal district court, claiming, among other things, that he was denied effective assistance of counsel in violation of his rights under the Sixth Amendment to the United States Constitution. The district court denied Johnson's petition, and Johnson appeals.

---

[*] The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

For the reasons below, we affirm the decision of the district court.

## I.

Willie Johnson was charged in a fifty-five count indictment with: (1) seventeen counts of rape of a victim under the age of thirteen in violation of Ohio Rev. Code Ann. § 2907.02; (2) ten counts of rape, in violation of Ohio Rev. Code Ann. § 2907.02; (3) twenty-six counts of gross sexual imposition in violation of Ohio Rev. Code Ann. § 2907.05; and (4) two counts of intimidation in violation of Ohio Rev. Code Ann. § 2921.04. The charges against Johnson arose out of allegations made by the adolescent daughters of his former girlfriend, Elnora Benefied, that he engaged in improper sexual activity with them and later threatened to harm Benefield if she pursued charges against him. Johnson's case was set for trial in the Ohio Court of Common Pleas for the County of Cuyahoga. The Ohio Court of Appeals described the course of the early proceedings before the Ohio trial court:

> The record reveals that the trial court found appellant to be indigent at his arraignment on August 7, 2001 and appointed counsel to represent him. That counsel withdrew with the permission of the court on August 15, 2001[,] and the Public Defender's Office was contemporaneously appointed as appellant's legal representative. Trial commenced on August 30, 2001 . . . .

*State v. Johnson*, No. 80436, 2002 WL 31839432, at \*1 (Ohio Ct. App. Dec. 19, 2002). Christopher Roberson, of the Public Defender's Office, appeared on Johnson's behalf on August 30. The trial court engaged Roberson in the following exchange:

The Court: How long have you been Mr. Johnson's counsel?

Mr. Roberson: The case was assigned to the public defender's office. He was arraigned on August 7th and we received the case shortly after that, so a few weeks, your Honor.

The Court: You received the case right out of the arraignment room?

2

Mr. Roberson: No I didn't receive the case – initially, the case was assigned to another attorney at the public defender's office. And, she was not going to be able to, because of conflicts she had as far as her work schedule, she was not going to be able to continue on the case.

After he was re-indicted, another attorney was assigned to the case and this attorney also had conflicts of time problems, so he was permitted to withdraw. Subsequent to that, then I was appointed on this case. That would have been some time after August the 13th.

The Court: All right. So, you had this case no longer than seventeen days. Today's August 30th.

Mr. Roberson: Correct.

The Court: Mr. Johnson, do you want to go forward with trial today? Your lawyer's had this case seventeen days. The maximum penalty provided under twenty-some counts here is life imprisonment, fifteen years to life imprisonment. He has told me repeatedly that you wish to go forward. That's why I'm here. That's why I told everybody to be here to try this case.

The Defendant: Yes.

The Court: You still want to go forward? The time is running on the case. We have to go forward on the case. That's what you want to do?

The Defendant: Yes.

The Court: I would continue the case today at your request if you requested such to get your attorney more involved in the facts of the case. But, without your request to do so, I will not do it. You want to go forward then?

The Defendant: Yes, because from what I see, you know, it still is going to be just me.

JA 417-19. After correcting a prior misstatement regarding the possible sentence to which Johnson could be subject upon conviction, the court again asked if he was prepared to continue. Johnson responded in the affirmative. Trial proceeded. On September 4, the third day of trial, at the beginning of the direct examination of one of the minor victims, Roberson asked to approach the

3

bench. There, he made an oral request for a continuance because, over the weekend, Johnson had informed him that his sister was attempting to hire a new attorney. The state objected to the continuance, and the court overruled Johnson's motion.

During the course of trial, the state offered evidence from both minor victims, their mother, their siblings, school personnel, law enforcement officials, and the doctor who examined one of the victims. The victims testified that Johnson, who lived with Benefield and her children for thirteen years, had regularly subjected them to inappropriate sexual touching over the course of two years. Benefield testified that when she learned of Johnson's activities and notified the police, Johnson returned to her home and threatened her with violence. Although Roberson cross-examined each witness and offered an opening and closing statement, he did not present any defense witnesses. Johnson did not testify. The jury returned a verdict of guilty on all of the counts before it:[1] eleven counts of rape, eight counts of gross sexual imposition, and two counts of intimidation. The court sentenced Johnson to two consecutive life sentences for the child rape convictions, concurrent ten-year sentences for the additional rape charges, and one-year sentences for each count of gross sexual imposition and intimidation, to run concurrent with his other sentences.

Johnson appealed his conviction to the Ohio Court of Appeals, raising seventeen assignments of error. The court affirmed Johnson's convictions and sentences on December 19, 2002. *State v. Johnson*, No. 80436, 2002 WL 31839432 (Ohio Ct. App. Dec. 19, 2002). On February 14, 2003, Johnson filed a notice of appeal with the Ohio Supreme Court. That court dismissed Johnson's appeal on May 16, 2003, citing the absence of any substantial constitutional questions.

---

[1] The trial court dismissed 35 counts prior to submitting the case to the jury.

4

On April 12, 2004, Johnson filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Ohio. The court referred the petition to a United States Magistrate Judge, who issued a report and recommendation advising the district court to deny Johnson's petition. Johnson filed timely objections to the report and recommendation. The district court rejected these objections and, on January 31, 2005, adopted the magistrate's report and recommendation and also denied Johnson's request for a certificate of appealability. Johnson filed his notice of appeal with this court on February 22, 2005, and we granted a certificate of appealability on two issues raised by Johnson: (1) whether Johnson was denied the effective assistance of counsel because a new attorney was appointed to represent him less than seventeen days[2] prior to trial; and (2) whether the trial court made sufficient inquiry regarding Johnson's dissatisfaction with newly appointed counsel when it denied his motion for a continuance.

## II.

### A.

The propriety of the district court's decision on Johnson's habeas petition is a question of law we review *de novo*. *Mitchell v. Mason*, 325 F.3d 732, 737 (6th Cir. 2003). The state court's factual determinations are presumptively correct, and a habeas petitioner bears the burden of showing, by clear and convincing evidence, that the state court's findings of fact are erroneous. *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which applies to all habeas petitions filed after April 24, 1996, governs

---

[2]Although the certificate of appealability identifies the duration of Roberson's appointment as seventeen days, presumably in reliance on the state trial court's statement, the record indicates that Roberson was not assigned to the case more than fifteen days prior to trial. The Ohio Court of Appeals also identified the relevant period as fifteen days. We adopt the fifteen-day finding.

Johnson's petition. *Frazier v. Huffman*, 343 F.3d 780, 787 (6th Cir. 2003). AEDPA permits a

federal court to grant relief from a state court judgment only if the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United states; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Only the "holdings, as opposed to dicta, of the Supreme Court's decisions as

of the time of the relevant state-court decision" qualify as clearly established federal law for habeas

purposes. *Mitchell*, 325 F.3d at 738. A federal court may grant relief from a state court judgment

under the "contrary to" clause where the state court decision is "opposite to that reached by [the

Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme

Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413

(2000). Relief is appropriate under the "unreasonable application" clause where "the state court

identifies the correct governing legal principle from [the Supreme Court's] decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id.* "An unreasonable

application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "The proper

inquiry for the 'unreasonable application' analysis is whether the state court decision was objectively

unreasonable and not simply erroneous or incorrect." *Keith v. Mitchell*, 455 F.3d 662, 669 (6th Cir.

2006).

We review the decision of the Ohio Court of Appeals, the last state court to address the

merits of Johnson's claims, *Hunt v. Mitchell*, 261 F.3d 575, 582 n.3 (6th Cir. 2001), and limit our

review to those issues identified in the certificate of appealability. *Searcy v. Carter*, 246 F.3d 515, 518 (6th Cir. 2001).

**B.**

Johnson contends he was constructively denied effective assistance of counsel because of the limited time between Roberson's appointment and his trial date. Courts typically review a defendant's claim that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment under the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), wherein a petitioner must make a showing of both deficient performance and actual prejudice to his case. In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court held, however, that a defendant is entitled to a presumption of prejudice where circumstances arising in a criminal prosecution "are so likely to prejudice the accused that the costs of litigating their effect in a particular case is unjustified." *Id.* at 658. The Court in *Cronic* identified three situations where a defendant is entitled to a presumption of prejudicial impact: (1) where the defendant is subject to a "complete denial of counsel," including those situations where a defendant was denied the presence of counsel at a "critical stage"; (2) where defense counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) in situations where "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate." *Id.* at 659-60; *see also Bell*, 535 U.S. at 695-96 (reaffirming *Cronic*'s holding). Johnson argues that his claim falls within this third category because the limited time between Roberson's appointment and the commencement of trial made it impossible that any lawyer could provide constitutionally adequate assistance of counsel.

As to Johnson's claim of constructive denial of counsel, the Ohio appeals court held:

7

As is demonstrated from the . . . colloquy [between Roberson and the trial court at the commencement of trial], appellant was asked on several occasions if he wanted to go forward. Appellant repeatedly states in his brief before this court that his trial counsel did not "feel prepared" or was "admittedly ill prepared." This is untrue. Not only did appellant never voice any hesitancy with appointed counsel, appointed counsel did not indicate or otherwise demonstrate to the court that counsel was unprepared to go forward. On the contrary, when inquired by the court, counsel stated that he was prepared to go forward.

While it is true that a court's decision to appoint counsel on the day of trial has been found to be prejudicial error, that is not the case here. *Compare Hunt v. Mitchell* (C.A.6, 2001), 261 F.3d 575. We see no error. . . .

Appellant's first assignment of error is not well taken and is overruled.

*Johnson*, 2002 WL 31839432, at *2.

The state court decision is not based upon an unreasonable application of established Supreme Court precedent. As a preliminary matter, while Johnson insists the trial court appointed the Public Defender's Office to represent him on August 20, ten days before the start of trial, the journal entry from the state trial court confirms the state appellate court's account of the trial court's actions, that is, that the public defender's office was assigned to Johnson's case August 15, fifteen days before trial was to begin. Although the precise date Roberson assumed responsibility for Johnson's case cannot be ascertained from the record, Roberson had Johnson's case at least three days prior to trial, because he appeared on Johnson's behalf at the taking of the videotape testimony of Dr. Mark Feingold, a state witness, on August 27. Given the reasonably able manner in which Roberson handled the taking of Feingold's testimony – he both offered substantive objections and thoroughly cross-examined the doctor – it is likely Roberson had the case more than three days.

There is, additionally, support for the Ohio Court of Appeals's determination in the trial record. On the first day of trial, Roberson represented to the court that he was prepared to proceed

8

with trial. Moreover, the record reveals that Roberson performed competently during trial, the limited preparation time notwithstanding. On cross examination, Roberson identified many of the inconsistencies in the testimony of the minor victims and their siblings who testified. Roberson called no additional defense witnesses, but it is not clear there was anyone else to be called, since, it appears, all of the individuals with personal knowledge of the incident were present at trial and subjected to cross examination. Finally, although Roberson had limited time to prepare, it is reasonable to assume that, as a member of the Public Defender's Office, he was well-versed in Ohio criminal procedure and substantive law. *Compare Cronic*, 466 U.S. at 650 (observing that appointed attorney was "young lawyer with a real estate practice").[3]

Johnson relies on *Hunt v. Mitchell*, 261 F.3d 575 (6th Cir. 2001), in support of his claim of entitlement to *Cronic*'s presumption. In *Hunt*, the Sixth Circuit considered habeas petitioner Wayne Hunt's claim that he was entitled to a presumption of prejudice under *Cronic* due to his appointed attorney's inability to prepare prior to trial. As the court described the facts underlying Hunt's claim, police arrested Hunt following a drunken altercation at his home one evening. *Id.* at 578. Hunt remained in jail for eighty-seven days following his arrest until the state returned an indictment against him charging him with felonious assault and domestic violence. *Id.* Two days later, Hunt was arraigned in the Court of Common Pleas of Cuyahoga County, Ohio, where the court appointed an attorney to represent him. *Id.* That same day, the trial court informed Hunt:

> Mr. Hunt . . . we have to start trial today because apparently this is your 90th day of incarceration. So if you want to go to trial, that's fine. I'll have them take you

---

[3]Unfortunately, we are without the benefit of any information from Roberson concerning the preparatory activities in which he engaged prior to trial. Johnson did not secure an affidavit from Roberson in support of his habeas petition. All that appears in the record is an affidavit from Johnson concerning what Roberson allegedly told him.

downstairs and have you changed into civilian clothes. In the meantime we'll have the jury brought up and we'll start trial or you can waive time if you want more time to consult with your lawyer to prepare your case. Those are your two options.

*Id.* When Hunt's newly appointed counsel requested ten minutes to consult with Hunt, the court responded, "There is no ten minutes. He's got to be taken downstairs. It's pretty straight forward." *Id.* The court in *Hunt* determined that petitioner had been denied access during the critical pretrial phase of his trial insofar as he did not have an opportunity to consult with his attorney even once before the start of voir dire. *Id.* at 583. In addition, the court noted that Hunt remained in jail, apparently forgotten, for eighty-seven days before being indicted, was rushed through the pretrial process, and forced to choose between his right to the aid of counsel and his right to a speedy trial and held that the "egregious circumstances surrounding the trial court's appointment of counsel" also justified application of the *Cronic* presumption. *Id.* at 583-84.

In *Mitchell v. Mason*, 325 F.3d 732 (6th Cir. 2003), the Sixth Circuit again considered the *Cronic* doctrine. The petitioner, Charlie Lee Mitchell, was convicted in Michigan state court of second-degree murder and sentenced to imprisonment. *Id.* at 734-35. Before the start of his trial, Mitchell wrote a series of letters to the trial court, stating his attorney had not visited him in prison or consulted with him in court. *Id.* at 735. Defense counsel failed to appear for a hearing held on Mitchell's motion for withdrawal, where Mitchell notified the court that he received a letter from counsel that he had been suspended from the practice of law for a month. *Id.* Defense counsel was reinstated the first day of jury selection and appeared on Mitchell's behalf. *Id.* He informed the trial court that Mitchell wished to dismiss him as counsel. *Id.* The court denied Mitchell's motion without prejudice, and Mitchell was subsequently convicted. *Id.* at 736. After the Michigan state courts denied his claims of ineffective assistance of counsel, Mitchell filed a § 2254 petition with

10

the federal district court, which the district court granted. *Id.* at 737. The panel affirmed the grant of relief, observing, "When counsel is appointed but never consults with his client and is suspended from practicing law for the month preceding trial, and the court acquiesces in this constructive denial of counsel by ignoring the defendant's repeated requests for assistance, *Cronic* governs." *Id.* at 744.

*Hunt* and *Mitchell* present factual scenarios more egregious than those underlying Johnson's habeas petition. Defense counsel in *Hunt* had no time to consult with his client before proceeding to trial, 261 F.3d at 583, and the court in *Mitchell* concluded that defense counsel's thirty-day suspension from practice prior to trial and extremely limited contact with Mitchell amounted to a "complete denial of counsel at a critical stage of the proceedings." 325 F.3d at 741. Other courts have rejected *Cronic* claims where the circumstances complained of amounted to little more than a limited period of preparation for appointed counsel. *See, e.g.*, *Cronic*, 466 U.S. at 665 (denying claim to presumption of prejudice where appointed counsel, a young real estate lawyer, had twenty-five days to prepare for trial); *Jackson v. Carroll*, 161 F. App'x 190, 193 (3d Cir. 2005) (denying *Cronic* claim where defense attorney had sixteen days to prepare for trial); *Conklin v. Schofield*, 366 F.3d 1191, 1202 (11th Cir. 2004) ("The fact that Chason had just thirty-seven days to prepare for trial does not lead to *per se* ineffectiveness."); *Glover v. Miro*, 262 F.3d 268, 278 (4th Cir. 2001) (rejecting petitioner's claim that his counsel's performance was presumptively prejudicial when he had only two days to prepare and had fifty to sixty other cases to handle). These cases undercut Johnson's attempt to make the number of days Roberson had for preparation the pivotal issue in this case.

Ideally, defense counsel would enjoy greater opportunity to prepare before proceeding to trial. The presumption of prejudice afforded under *Cronic* is limited, however, to those cases where

defendant was subject to a pretrial and trial process so fundamentally flawed that no lawyer of any

quality could provide constitutionally adequate counsel. Johnson does not present such a case. The

Ohio Court of Appeals did not engage in an unreasonable application of clearly established federal

law in denying Johnson's claim, and we accordingly reject his petition on that ground.[4]

## C.

Johnson contends that he was denied effective assistance of counsel when the state trial court

refused his request for substitution of counsel during trial and failed to inquire into the substance of

Johnson's dissatisfaction with Roberson. As to this claim, the Ohio Court of Appeals wrote:

> In his second assignment of error, appellant contends that he was denied due process of law when the trial court failed to make an adequate inquiry regarding his request to replace his appointed counsel with counsel of his own choosing.
>
> We note at the outset that, contrary to appellant's representations, appellant's request was for a continuance, not a request for his counsel to withdraw. Notwithstanding, we note that if a criminal defendant has demonstrated "good cause, such as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict," then a trial court's failure to honor a timely request for new counsel would constitute a denial of effective assistance of counsel. *State v. Blankenship* (1995), 102 Ohio App.3d 534, 558, 657 N.E.2d 559; *State v. Carter* (1998), 128 Ohio App.3d 419, 423, 715 N.E.2d 223. In all other cases, a trial court's decision denying a motion for a continuance to retain new counsel is governed by an abuse of discretion standard. *State v. McNeill* (1998), 83 Ohio St.3d 438, 452, 700 N.E.2d 596.
>
> Appellant relies on this court's decision in *State v. Beranek* (Dec. 14, 2000), Cuyahoga App. No. 76260, 2000 Ohio App. Lexis 5868, for the proposition that a trial court commits reversible error when it does not inquire of an indigent criminal

---

[4]The disposition of the *Cronic* issue does away with any need to consider Johnson's claim under *Strickland*. Under *Strickland*, "a defendant's right to effective assistance of counsel is violated where counsel's representation fell below an objective standard of reasonableness and where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McFarland v. Yukins*, 356 F.3d 688, 709-10 (6th Cir. 2004) (internal citation and quotation marks omitted). Whatever Roberson's imperfections, there is no evidence in the record that his performance fell below an objective standard of reasonableness or that a correction of any errors would have altered the outcome of Johnson's trial.

12

defendant as to that defendant's reasons for requesting a change of counsel. In that case, the defendant had requested that his trial counsel withdraw and trial counsel thereafter made an oral motion prior to voir dire to be removed. Finding the motion not only untimely but not written, the court denied the motion.

The *Beranek* court, relying on *State v. Prater* (1990), 71 Ohio App.3d 78, 593 N.E.2d 44, found that a trial court has a duty to investigate the reasons behind the defendant's request for a change of counsel, however brief or minimal, once that defendant asserts allegations specific enough to justify further investigation. *Id*. at 12, 593 N.E.2d 44. Notwithstanding that there were no specific allegations made by the defendant in *Beranek*, the court stated that it would "not penalize Beranek for failing to press the issue before the [court] when the [court] made it clear that [it] would not consider Beranek's complaints and did not inquire into their nature."

In this case, the record reveals that the state's first witness, the victims' mother, had finished testifying when the state called Victim I as its second witness. After the court had inquired as to this victim's age and ability to testify truthfully and before the state began its direct examination, appellant's counsel interrupted, stating:

[APPELLANT'S COUNSEL]: Okay, what I'm doing is making an oral request for a continuance. I spoke with the [appellant] over the weekend. He says his sister was in the process of trying to hire an attorney to take over the case. And, I just want to bring that to the Court's attention.

THE COURT: He wants it continued to hire a lawyer.

THE PROSECUTOR: We would object. We're ready to go forward.

THE COURT: Motion overruled.

During sentencing, appellant stated:

I still say that I'm innocent, and I want it on the record that I tried to dismiss my attorney, and he said that you disallowed it, even though there was no stenographer over there, he said that you disallowed it.

Trial counsel thereafter explained to the court:

Just for clarification, Your Honor, with respect to the statement just made, he did ask me to approach the Court to try to get new counsel appointed on the case, and I explained to him that one of the problems was there was a time problem with respect to this case, and I asked would he be willing to sign a waiver to extend the time, and

of course, he wasn't willing to do that, which is part of the reason why the Court decided that new counsel would not be appointed to the case."

Appellant maintains that this exchange "obviously" supports his early dissatisfaction with his appointed counsel, which triggered the court's duty to inquire. We disagree.

Assuming without deciding that *Beranek* appropriately states the law on this issue, nothing in the record before us leads this panel to conclude that appellant questioned the adequacy of his appointed counsel. Certainly in the harsh light of hindsight, appellant may feel justified in finding his trial counsel inadequate because of an unfavorable verdict. While there may have been a discussion between appellant and his trial counsel on this issue, there is nothing in the record before us that supports appellant's argument that he alleged with sufficient specificity that he was unhappy with his counsel during the course of the trial so as to trigger any duty on the part of the trial court to make further inquiry. Unlike *Beranek*, moreover, we see nothing in the record to support that appellant was absolved of making specific allegations because to do so would have been a vain act. Consequently, we see no error in the trial court's decision to deny appellant a continuance.

Appellant's second assignment of error is not well taken and is overruled.

*Johnson*, 2002 WL 31839432, at *2-4 (paragraph symbols and quotation marks omitted).[5]

In order to demonstrate a conflict with federal jurisprudence warranting habeas relief, Johnson must first point to clearly established federal law as expressed by the Supreme Court. *Mitzel v. Tate*, 267 F.3d 524, 530-31 (6th Cir. 2001). Johnson chiefly relies on this court's opinion in *United States v. Iles*, 906 F.2d 1122 (6th Cir. 1990), and decisions from other federal courts of appeals to support the proposition that the constitution requires a trial court to inquire into the basis for a defendant's request to secure new counsel. He does not cite any Supreme Court precedent establishing such an obligation under the Sixth Amendment, and we have found no Supreme Court

---

[5]The analysis of the Ohio Court of Appeals, notably, does not identify any Supreme Court authority or federal law. This omission does not warrant reversal, however. As the Supreme Court explained in *Early v. Packer*, 537 U.S. 3, 8 (2002), avoiding the "pitfalls" identified in § 2254 "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *See also Williams v. Bagley*, 380 F.3d 932, 942 (6th Cir. 2004).

14

case law on the issue.[6] "If [the Supreme Court] has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." *Williams*, 529 U.S. at 381; *see also Mitzel*, 267 F.3d at 531 ("We may not look to the decisions of our circuit, or other courts of appeals, when deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.") (internal quotation marks omitted). Johnson's inability to point to Supreme Court authority contravened by the Ohio Court of Appeals decision is fatal to his § 2254 claim that the court's decision is contrary to clearly established federal law. Perceiving no conflict with existing clearly established federal constitutional law, we deny Johnson's ineffectiveness claim insofar as it is based upon the trial court's failure to inquire into the basis of his concern with his appointed attorney.

## III.

For the foregoing reasons, we affirm the judgment of the district court denying petitioner Willie Johnson's request for habeas relief under 28 U.S.C. § 2254.

---

[6]The sole conceivable ground available to Johnson is found in the line of cases establishing a constitutionally-imposed duty to inquire into a defense attorney's potential conflict of interest in representation. *See, e.g.*, *Mickens v. Taylor*, 535 U.S. 162 (2002). This is not the claim Johnson presented to the state appellate court, and, in any event, there is no evidence that Roberson operated under a conflict of interest.