NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0155n.06

No. 08-1964

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 15, 2010**
LEONARD GREEN, Clerk

WILLIE DANSBY,                          )
                                        )
    Petitioner-Appellant,               )
                                        )   ON APPEAL FROM THE UNITED
v.                                      )   STATES DISTRICT COURT FOR THE
                                        )   EASTERN DISTRICT OF MICHIGAN
JAN TROMBLEY, Warden,                   )
                                        )
    Respondent-Appellee.                )
                                        )

Before:  MERRITT, COLE, and COOK, Circuit Judges.

COOK, Circuit Judge.  Willie Dansby appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  We affirm the district court's denial of habeas relief.

I.

The district court thoroughly detailed the facts, so we review them only briefly here.  A Wayne County grand jury charged Dansby with first-degree murder, assault with intent to commit murder, and possession of a firearm during the commission of a felony ("felony firearm").  The charges stemmed from the shooting death of Clarence Perkins.

In March of 2003, Perkins, along with Rick Ivery and Paul Cobb, remodeled Dansby's kitchen for a fee of $4,000. When the trio went to Dansby's house in April to collect the last several hundred dollars due them, no one answered the door. They returned later that day, with Perkins reaching the porch first, Ivery following behind, and Cobb still in his vehicle. After a brief verbal exchange, Dansby fatally shot Perkins, but missed Ivery.

At trial, the parties agreed that Dansby fired the gun that killed Perkins, but disagreed as to whether he fired in self-defense. Ivery testified that neither he nor Perkins approached Dansby in a threatening manner and that there had been no arguments or problems concerning Dansby's tardy payments. He also denied having a weapon on him that day and testified that the other men were not carrying weapons either. Cobb corroborated much of Ivery's testimony.

Two of Dansby's foster children testified that on the morning of April 18, while their foster parents were gone, they heard men cursing and banging on the front door. The men also cut off the home's power. Frightened, the children hid upstairs. When Dansby and their foster mother returned home, the children relayed what had occurred and identified Ivery as one of the men responsible for the disturbance. Both Ivery and Cobb maintained that they caused no trouble that morning.

Taking the stand in his own defense, Dansby agreed that, prior to April 18, he and Ivery's work crew had gotten along well; but he insisted that after hearing his children's account of the men's intimidating behavior at his home, he believed the men posed a threat to him and his family. Dansby testified that he shot at Perkins and Ivery in self-defense.

Two police investigators also testified. Investigator Barbara Higgins told the jury that she advised Dansby of his constitutional rights after he turned himself in. Investigator Tawnya King testified that Dansby requested a lawyer shortly into her interrogation.

Before closing arguments, defense counsel requested a jury instruction on manslaughter as a lesser-included offense. The court refused to give the requested instruction, instead instructing on first-degree premeditated murder and second-degree murder. The jury convicted Dansby of second-degree murder, Mich. Comp. Laws § 750.317, as well as assault with intent to commit murder, Mich. Comp. Laws § 750.83, and felony firearm, Mich. Comp. Laws § 750.227b. The Michigan Court of Appeals affirmed Dansby's convictions, *People v. Dansby*, No. 251732, 2005 WL 387656 (Mich. Ct. App. Feb.17, 2005), and the Michigan Supreme Court denied leave to appeal, *People v. Dansby*, 703 N.W.2d 188 (Mich. 2005) (table).

Dansby then sought federal habeas corpus relief. The district court denied the petition, but we granted a certificate of appealability on three issues: (1) whether the trial court's jury instructions violated Dansby's right to due process; (2) whether the admission of evidence relating to Dansby's post-arrest statements violated his Fifth Amendment right against self-incrimination and his right to due process; and (3) whether Dansby received ineffective assistance of trial counsel.

II.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs our review of

Dansby's petition. Thus, although we examine the district court's legal conclusions de novo, we may not grant habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Only Supreme Court holdings qualify as clearly established federal law for habeas purposes. *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

We review the decision of the Michigan Court of Appeals, the last state court to reach the merits of Dansby's claims, *Hunt v. Mitchell*, 261 F.3d 575, 581–82 n.3 (6th Cir. 2001), addressing the three issues identified in the certificate of appealability. Under the "contrary to" clause, we may grant relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13. Under the "unreasonable application" clause, we may grant the writ only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

A.      Failure to Provide Jury Instructions on Lesser-Included Offenses

Dansby first alleges that the trial court violated his Fourteenth Amendment right to due process when it rejected his request to instruct the jury on voluntary manslaughter and neglected to *sua sponte* instruct the jury on involuntary manslaughter. In Michigan, voluntary and involuntary manslaughter are necessarily lesser-included offenses of murder, and an instruction on both offenses

must be given if a rational view of the evidence supports the instruction. *People v. Mendoza*, 664 N.W.2d 685, 693 (Mich. 2003). The Michigan Court of Appeals found that a rational view of the evidence did not support an instruction for voluntary manslaughter and upheld the absence of an involuntary manslaughter instruction under plain-error review.[1]

Dansby's claim fails because the Supreme Court has never held that due process requires the giving of jury instructions on lesser-included offenses in noncapital cases. In *Beck v. Alabama*, 447 U.S. 625 (1980), the Supreme Court granted state criminal defendants in capital murder cases a constitutional right to jury instructions on lesser-included offenses, but expressly reserved the question of "whether the Due Process clause would require the giving of such instructions in a noncapital case." *Id*. at 638 n.14. Because Dansby did not face capital charges, the Michigan Court of Appeals's rejection of Dansby's challenge to the jury instructions falls outside of AEDPA's purview. *See Carey v. Musladin*, 549 U.S. 70, 76–77 (2006). Thus, the district court correctly denied his claim.

B.      Admission of Evidence Relating to Post-Arrest Statements

Dansby next argues that the state trial court's admission of testimony concerning his post-arrest refusal to answer further questions without a lawyer violated his rights to freedom from self-

---

[1]The court applied plain-error review because Dansby's counsel neither requested an instruction on involuntary manslaughter nor objected to the absence of an involuntary manslaughter instruction.

incrimination and due process of law. Specifically, Dansby contests the court's admission of Investigator Tawnya King's testimony. King, a rebuttal witness for the prosecution, interviewed Dansby after he turned himself in. On direct examination, King testified that her interview with Dansby ended when he refused to answer a question and requested a lawyer. On re-direct, the prosecutor again explored Dansby's request for counsel, asking Investigator King: "Did you find it strange . . . when you were conducting your interview . . . that he asked for a lawyer?" King answered: "I wouldn't call it strange. I would call it convenient." The Michigan Court of Appeals rejected Dansby's claim, finding "no reasonable likelihood that the prosecutor's questioning into defendant's request for counsel affected the outcome of the trial." *Dansby*, 2005 WL 387656, at *4. Assuming a constitutional violation, we, too, find any error harmless.

"[W]e need only review the State court's finding of harmless error under *Brecht*, which also satisfies AEDPA's less stringent standard." *Jaradat v. Williams*, 591 F.3d 863, 869 (6th Cir. 2010). Harmless error review requires the court to assess whether the constitutional error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). Dansby argues that the admission affected the outcome of the trial by creating a potential for the jury to find Dansby's refusal to comment on the questions asked, or his request for a lawyer, inconsistent with his self-defense claim because a person acting in self-defense would have answered King's questions without hesitation.

We disagree and hold that the admission did not influence the jury's verdict. Before King took the stand, Dansby admitted that he asked to see a lawyer. And Investigator King testified that Dansby possessed a constitutional right to consult with a lawyer and that there was nothing "strange" or "peculiar" with his request. Those statements, and the absence of an argument that Dansby's guilt should be inferred from his invocation of the right to counsel, mitigated any prejudice.

Most critically, the evidence against Dansby was overwhelming. Defense counsel never disputed that Dansby shot Perkins, but instead, argued that he fired in self-defense; and the evidence presented at trial undercut Dansby's self-defense theory. For example, although Dansby claimed that Ivery possessed a gun, Ivery and Cobb testified that neither they, nor Perkins, were armed. Moreover, Dansby claimed that he ran onto the porch to check on Perkins's condition—an odd thing to do if he believed Ivery possessed a gun and posed a threat to his life. Indeed, despite Dansby's claim that Ivery fired at him, all casings found at the scene came from the same weapon. Finally, no physical evidence supported Dansby's allegation that Perkins, Ivery, and Cobb damaged his home that morning. The trial court record, with its overwhelming evidence of guilt, convinces us that the admission of King's testimony did not influence the outcome of the trial.

C.      Ineffectiveness of Trial Counsel

Finally, Dansby urges this court to overturn the district court's conclusion by finding that his lawyer rendered constitutionally ineffective assistance both when he elicited testimony regarding

Dansby's post-arrest request for counsel and when he failed to object[2] to Investigator King's

testimony concerning that same request. To prevail on his ineffective assistance claim, Dansby must

show that: (1) his counsel performed deficiently; and (2) the deficient performance prejudiced his

defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Michigan Court of Appeals held

that, even if defense counsel performed deficiently, Dansby failed to show prejudice. In the interest

of brevity, we presume counsel's deficiency, and test the presumed deficiency for prejudice.

The same considerations that lead us to reject Dansby's challenge to the admission of his

post-arrest statements cause us to reject his ineffective assistance of counsel claim. With the

overwhelming evidence of Dansby's guilt, counsel's decisions concerning the admission of Dansby's

post-arrest request for a lawyer did not affect the trial's outcome.

III.

For these reasons, we deny Dansby's petition for habeas corpus.

---

[2]Although defense counsel failed to object to the prosecutor's question about who terminated the interview with Investigator King, he half-heartedly objected when the prosecutor asked King whether she found Dansby's request for counsel peculiar, saying: "I don't know, Judge. That's kind of like on the verge of being objectionable."