RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0279P (6th Cir.)
File Name: 03a0279p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

STEWART BARNES,
*Petitioner-Appellant,*

*v.*

No. 01-2026

FRANK ELO, Warden,
*Respondent-Appellee.*

———————

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 97-60150—George C. Steeh, District Judge.

Argued: March 27, 2003

Decided and Filed: August 8, 2003

Before: MERRITT and BATCHELDER, Circuit Judges;
DUPLANTIER, Senior District Judge.*

———————

## COUNSEL

**ARGUED:** Kenneth P. Tableman, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, for

———————

*The Honorable Adrian G. Duplantier, Senior United States District Judge for the Eastern District of Louisiana, sitting by designation.

Appellant. Raina I. Korbakis, STATE OF MICHIGAN, DEPARTMENT OF ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee. **ON BRIEF:** Kenneth P. Tableman, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, for Appellant. Raina I. Korbakis, STATE OF MICHIGAN, DEPARTMENT OF ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee.

DUPLANTIER, D. J., delivered the opinion of the court, in which BATCHELDER, J., joined. MERRITT, J. (pp. 14-17), delivered a separate dissenting opinion.

———————

## OPINION

———————

DUPLANTIER, Senior District Judge. After an evidentiary hearing following remand by this court, the district court dismissed the petition of Stewart Barnes for *habeas corpus* relief pursuant to 28 U.S.C. §2254. Barnes appeals, urging that his convictions must be vacated because his trial counsel rendered ineffective assistance with respect to his state court convictions. For the following reasons, we **AFFIRM**.

Petitioner is a state court prisoner who, following a bench trial, was convicted of one count each of breaking and entering with intent to commit criminal sexual conduct, assault with intent to commit second degree criminal sexual conduct, and felonious assault. The trial judge sentenced petitioner to three concurrent sentences: six to fifteen (15) years on the breaking and entering count, three to five years on the assault with intent to commit second degree criminal sexual conduct count, and two and a half to four years on the felonious assault count.

## RELEVANT FACTS

The victim, who was 12 at the time of the offense, testified that she went to bed at 3:30 a.m. on July 29, 1990; she was sharing a bed with a younger sister and brother. The victim awoke when she felt a man kissing the side of her face. She struggled with her attacker; during the struggle he inflicted a serious cut on each of her arms. When the victim's sister began screaming, the attacker left the room. The victim saw "[h]im run down the stairs," "limping on one leg"; he "ran out" the front door.

Almost immediately, the police developed a composite "picture" of the assailant from a description by the victim. Within several days of the attack, the victim advised the investigating officer that her assailant had a limp. During the ensuing investigation, the victim viewed a large number of "mugshots," a photo line-up, and a live line-up; she did not make any identifications during those sessions. No photographs of petitioner were among those shown to the victim by the police, nor did petitioner participate in the live lineup at that time. About six months after the attack, while complainant was at a bus stop, she saw petitioner walking in the area and recognized him as the man who attacked her. On the next day an investigating officer established surveillance of the bus stop. The victim identified the suspect by a hand signal, and the investigating officer arrested Barnes. Thereafter, the victim viewed a line-up in which petitioner participated; the victim identified petitioner as her attacker.

At trial the parties stipulated that Barnes suffers from post-polio syndrome and wears a brace on his leg. No additional medical evidence was presented at trial.

In post-conviction proceedings before the state court and the federal district court, petitioner asserted several grounds for *habeas* relief. In this appeal, he raises only one issue: that his trial counsel rendered ineffective assistance by failing to call any medical witnesses to testify concerning his physical limitations.

## PROCEDURAL HISTORY

Petitioner's attempts in state court to challenge his convictions are summarized in our prior opinion, *Barnes v. Elo*, 231 F.3d 1025, 1027-28 (6th Cir. 2000). In the state court proceedings, in support of his contention that trial counsel rendered ineffective assistance by failing to call medical witnesses to testify concerning his physical condition, petitioner submitted an affidavit by Dr. William Waring, his treating physician. In the affidavit Dr. Waring stated that "he had not been contacted by Barnes's trial counsel, that he would have been available to testify, and that he would have testified that Barnes was physically unable to run down the stairs and out the door as complainant testified her assailant had done." *Id.* at 1027.

After failing to obtain relief in the state courts, petitioner filed a federal petition for post-conviction relief, asserting that his trial counsel rendered ineffective assistance and that he was denied due process as a result of prosecutorial misconduct. The district judge denied relief on all grounds and granted petitioner a certificate of appealability limited to the contention of ineffective assistance of counsel.

On appeal, this court ordered the matter remanded for an evidentiary hearing on the issue of the competence of trial counsel, concluding that "[i]t is unclear from the record whether or to what extent trial counsel investigated Barnes's medical condition, and why he failed to contact Dr. Waring. Absent an evidentiary hearing and clear findings of fact, it is impossible to determine whether trial counsel's failure to investigate and call Dr. Waring was sound trial strategy." *Barnes v. Elo*, 231 F.3d at 1029.

## THE EVIDENTIARY HEARING

Upon remand the district judge conducted an extensive evidentiary hearing, which included testimony regarding trial counsel's failure to call medical witnesses. Marvin Barnett, Barnes's trial counsel, testified at length. Despite a diligent search, Barnett was unable to locate his file concerning the trial, which had occurred more than nine years before the hearing. Barnett admitted that he was unfamiliar with the specifics of post-polio syndrome but stated that he knew petitioner had a physical disability, walked with braces, and walked with a "significant gait." Prior to the trial Barnett reviewed Dr. Waring's medical records, which petitioner provided to him. Barnett also testified that prior to trial he spoke with someone knowledgeable about petitioner's medical condition; however, he was unable to recall with whom he spoke. Barnett did not dispute Dr. Waring's testimony that Barnett had not spoken to him.

Barnett testified that he had recommended that the defense pursue a mis-identification theory of defense. Additionally, he stated that the medical condition was important and that it was part of the defense. He testified:

I advised [petitioner] that it would be in his best interest to allow the parties to stipulate to his medical condition without calling witnesses to testify as to his medical condition because, my recollection was, that those same medical records which indicated he had a pre-existing medical condition, also indicated that [at] some point in his life that he was a house painter or something and he played basketball, not withstanding [sic] the fact that he had a gait in his walk, that he does move around, so we were trying to avoid all the negligence [sic] inferences that could be drawn from his medical records while at the same time preserving for the trier of fact all positive inferences that may have been drawn from his medical records.

. . . .

[B]ased on my review of his medical records there was damaging information in this record that would support some of the allegations that the complainant had made. The eleven year old girl had indicated that the person ran with a limp, and that although there was no question or need to establish that he could not run like a normal person, there were things in his record and his past employment that defeated our argument, and so it wasn't as though we simply ignored medical witnesses but as an experienced attorney I was trying to give the Defendant the benefit of everything positive in the record without the negatives associated with other things that were in his record.

Barnett opined that the trial judge "certainly understood, regardless of the specific nature of his condition, that it certainly mitigated against him running in the matter [sic] as it appeared and the complainant testified to." Barnett testified that petitioner agreed to the entry of the stipulation as to his medical condition in lieu of live testimony.

On cross-examination Barnett provided the following additional detail regarding his concern about the information contained in the medical record.

[B]ut we've got an allegation that somebody is climbing into a house and the idea that somebody at any point was a house painter concerned me, and I also remember there being something in there about him being able to play basketball. Now, I don't suspect he could have, you know, pushed the ball down the floor or pushed through the lane and did a slam dunk, but the mere fact that you can even play basketball at any point mitigates against not being able to get down some flights of stairs.

Barnett was concerned that a medical witness would testify on cross-examination that "[petitioner] had some mobility and that the witness would have to testify that he could move around quickly if he had to, and that he moved with a limp. My concern would be that the witness would establish exactly the opposite that we do not want to establish and undermine whatever mileage we thought we were going to get out of the stipulation."

Petitioner introduced Dr. Waring's deposition into evidence at the evidentiary hearing. r. Waring testified that petitioner had post-polio syndrome, would have had difficulty going down a stairway, and would have "a very herky jerky sort of motion going down the stairs." He conceded, however, that someone who lacked medical knowledge could describe petitioner's abnormal movement going down the stairs as a "limp." In commenting on the statement in his affidavit that "Barnes was physically unable to run down the stairs and out the door as complainant testified her assailant had done," Dr. Waring testified that in making that statement he assumed that the victim's reference to "run" meant a fast run. Dr. Waring testified that petitioner could not "run" with both feet off the ground at the same time and opined that petitioner could not physically run "anywhere close to normal gait, normal gait speed." Dr. Waring testified that petitioner's ability to move quickly was impaired and estimated that petitioner "moved a third or a fourth of normal running speed with the defects." However, he acknowledged that petitioner could move faster than his normal walking speed if he so desired.

At the evidentiary hearing on remand, petitioner testified that he could not run with both feet off the ground. He stated that Barnett had advised him that medical witnesses would testify during the trial. Petitioner also testified that he exhibited his leg to the state judge during his trial, and that the trial judge observed his movements in the courtroom.

The district judge credited Barnett's testimony that he concluded (and so advised petitioner) that the best course of action was to enter into a stipulation concerning petitioner's medical condition as well as Barnett's testimony that "he believed the trial judge understood that the condition mitigated against running." We accord considerable deference to the credibility determinations of the district judge. *See United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999) (citing *United States v. Cooke*, 915 F.2d 250, 252 (6th Cir. 1990)). The district judge concluded that the medical records and the potential medical testimony "included damaging information concerning defendant's capabilities and was less than compelling." He concluded that trial's counsel's performance was not deficient and that petitioner sustained no significant prejudice as a result of trial counsel's "decisions concerning medical evidence."

## STANDARD OF REVIEW

In reviewing the denial of a petition for post-conviction relief under 28 U.S.C. §2254, we review the legal conclusions *de novo;* findings of fact are reviewed for clear error. *Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003).

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which amended 28 U.S.C. §2254, governs this federal *habeas corpus* review of a state court conviction.

Title 28 U.S.C. §2254(d)(1)-(2) mandates that claims adjudicated on the merits in state court proceedings, such as petitioner's claim of ineffective assistance of counsel, are subject to the following standards of review:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A claim of ineffective assistance of counsel presents a mixed question of fact and law; we therefore apply the "unreasonable application" prong of §2254(d)(1). *Hunt v. Mitchell,* 261 F.3d 575, 580 (6th Cir. 2001). A state court unreasonably applies Supreme Court precedent "if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 407, 120 S.Ct. 1495, 1521 (2000). However, a federal court may not grant a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. at 1522.

Typically, in reviewing a state court's denial of a state prisoner's request for post-conviction relief we accord deference to the state court's decision.. 28 U.S.C. §2254d. However, as noted in our prior opinion (*Barnes v. Elo*, 231 F.3d at 1027-28), in ruling on petitioner's motion to remand for an evidentiary hearing and on the merits of the ineffective assistance claim related to the failure to call medical witnesses, the Michigan state court of appeals apparently failed to consider Dr. Waring's affidavit, which had been filed by petitioner. Indeed, in considering the merits of that claim the state court relied upon what it perceived to be a failure on the part of petitioner to file the affidavit which he had in fact

filed. *People v. Barnes*, No. 153885 (Mich. Ct. App. March 2, 1995). In these unusual circumstances, a federal court has no alternative but to conduct an independent review of the claim, because there is no foundation in the state court proceedings for AEDPA deference. See *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003).

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two prong test for evaluating claims of ineffective assistance of counsel: a defendant seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. With regard to the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687- 88, 104 S.Ct. at 2064. It is well established that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. at 2065. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* There is a strong presumption that an attorney's performance "falls within the wide range of reasonable professional assistance." *Id.*, 104 S.Ct. at 2065. "[T]he defendant must overcome the presumption that, . . . the challenged action might be considered to be sound trial strategy." *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed.2d 83 (1955)).

In order to satisfy the prejudice requirement, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068. If the defendant makes an insufficient showing on either component of the ineffective assistance of

counsel inquiry, it is not necessary to examine the remaining prong of the test. *Strickland v. Washington*, 466 U.S. at 697, 104 S.Ct. 2069.

## FAILURE TO CALL MEDICAL WITNESSES

Mr. Barnett's strategic decision to enter into the stipulation concerning petitioner's medical condition rather than call medical witnesses was not deficient. Dr. Waring's testimony does not establish that petitioner could not have entered the house, assaulted the victim, and escaped in the manner described by the victim. Rather, his testimony simply negates the possibility that petitioner could "run" normally, i.e., with both feet off the ground at the same time, or that he could "run" at a speed approximating that of someone who could "run" normally. The significance of that testimony is minimal. There was no testimony at the trial that the attacker "ran" like a normal person. To the contrary, the victim testified that the man "was limping on one leg" as he "ran" down the stairs. Dr. Waring also testified that an individual lacking medical knowledge could describe petitioner's gait going down the stairs as a "limp."

Petitioner focuses too narrowly on the victim's use of the word "run." "Run" is an imprecise word subject to numerous personal interpretations. It is reasonable to conclude that the young victim's description of her attacker's movements would not be precise. She saw him for only a brief period of time and under extremely stressful circumstances.

Additionally, there were sound tactical reasons not to call Dr. Waring as a witness. The personal history provided to Dr. Waring indicated that petitioner had played basketball and that he had previously worked as a house painter. Petitioner's past participation in those activities would undoubtedly have undercut an inference that his physical limitations would have prevented him from climbing through a window to enter the victim's house and fleeing down the stairs. Evaluating counsel's trial strategy based on his

perspective at the time of trial, as *Strickland* requires us to do, we cannot conclude that counsel's strategy was unreasonable. Barnett's decision to rely on the stipulation rather than call a medical witness was not deficient.

Having concluded that trial counsel's failure to call a medical witness did not constitute deficient performance, we need not address the prejudice prong of *Strickland*. Nevertheless, we note that in any event petitioner was not prejudiced by the lack of a medical witness. The victim positively identified petitioner as her attacker. The trial judge characterized the victim as "a thoughtful, honest, careful witness" and credited her identification of petitioner. More specifically, the trial judge, acutely aware of the "overall dangers inherent in eyewitness identification" noted that the victim's description of her assailant "fits the defendant to a tee [sic]." In characterizing the composite of the assailant produced by police based on the victim's description the trial judge stated "it's not only a likeness, it is the defendant . . . There are striking similarities and it's the closest match of any composite I've ever seen."

Additionally, the following statement by the trial judge makes it clear that despite the lack of a medical witness, the judge was aware of petitioner's disability and of counsel's argument that petitioner was not able to perform the activities described by the prosecution's witnesses.

[I]t's the defense that's offered as well and the suggestion that because of the physical condition of the defendant it was impossible for him to commit the crime. But the interesting thing about that is that the complainant herself in reporting to the police as her assailant was leaving, she saw the limp. That's part of her description as well to the police.

Okay, I mean, he [is] trying to say hey, she's wrong and that's she got the wrong guy, and look, she says I ran. But it's not only that she says he ran out of the house

after she was finally able to scream. She reports the limp to the police as part of the description she gives to the police, a description of which fit the defendant to a T, and she identifies the defendant as the person.

The fact-finder had the opportunity to observe petitioner's leg and brace as well as his ability to move. Petitioner's physical disability was obvious. The trial judge, having observed both the victim and the petitioner, was in the best position to evaluate the victim's testimony that her attacker "ran" down the stairs and determine whether petitioner was capable of that activity. Expert testimony concerning post-polio syndrome and the resulting limitations on petitioner's physical abilities would have shed little light on the relevant issue, i.e. whether petitioner, in escaping the scene of a serious crime, could hurriedly negotiate his way down a set of stairs and exit the house. The medical testimony would also have included the fact that petitioner had engaged in activities such as house painting and playing basketball. There is no reasonable likelihood that such testimony would have created a reasonable doubt in the mind of the trial judge that petitioner could not have been the perpetrator because he could not have "run" from the scene, as described by a frightened twelve year old girl who was bleeding profusely from the severe cuts inflicted upon her. There is no reasonable probability that but for counsel's failure to call a medical witness the result of the trial would have been different.

## CONCLUSION

The judgment of the district court dismissing petitioner's motion for post-conviction relief pursuant to 28 U.S.C. §2254 is AFFIRMED.

---

---

## DISSENT

---

MERRITT, Circuit Judge, dissenting. Counsel has a duty to undertake a reasonable investigation into his client's case and background before making strategic legal decisions to give up a defense. The failure to investigate and present available evidence about Barnes' medical condition, which requires that Barnes wear a leg brace and results in an abnormal gait, is particularly egregious in this case. The defense in this case was primarily mistaken identity; and, given all the evidence, it seems doubtful that Barnes was the perpetrator.

Barnes suffers from postpolio syndrome, a recently-identified condition affecting people after they have recovered from polio myelitis. The condition results in fatigue and muscle weakness, both in the parts of the body affected by the polio and sometimes in other muscle groups as well. As a result of this condition, Barnes wears a brace on his right leg, which he was wearing when arrested. The brace keeps his leg straight and makes him walk in a type of swinging gait that involves his whole body. To bend his knee, Barnes must unlock the brace. He describes his condition as not a limp, but a "paralytic abnormal gait." Dr. Waring, one of Barnes' physicians, explained in his deposition for the evidentiary hearing in federal court that Barnes' gait is "grossly abnormal" and he leans excessively from side to side when he moves. Waring Dep. J.A. at 614-18.

Barnes argues that he was denied effective assistance of counsel because trial counsel failed adequately to investigate the medical facts about postpolio syndrome and its effect on Barnes' physical abilities. Barnes' counsel *admitted* at the evidentiary hearing that he knew very little about Barnes' postpolio syndrome and yet he failed to investigate Barnes' medical records, talk to Barnes' doctor about the condition or

otherwise inform himself generally about the condition and its specific effect on Barnes. He could not describe postpolio syndrome; he had not gone over the medical records with a medical professional who could explain them to him; and he admitted that he talked very little with Barnes about the effect of the condition on Barnes' physical abilities. J.A. at 524-35. Barnes' counsel testified that by making the stipulation to the postpolio syndrome, he believed he was getting the "benefits" of the condition without dwelling on the "negatives" (as he called them) of the record. It is doubtful that the judge even understood what "postpolio syndrome" was. It was never explained on the record. Without knowing about the condition and its effects on Barnes, counsel simply could not make a reasoned strategic decision about whether or how to use the information at trial.

Counsel failed to obtain an opinion from any medical professional before trial on whether Barnes was able to perform the physical acts necessary to break into the house through a small basement window, the point of entry according to police testimony. Nor was there any medical proof about how Barnes was able to run away from the scene in the manner described by the victim. Without this knowledge, or at least an opinion, counsel could not make a competent strategic decision on whether the information would have been helpful. As a result, the only evidence in the record concerning the condition is a stipulation that defendant wears a brace and that he suffers from postpolio syndrome. There is no attempt to explain the condition or its effects on Barnes in the record. Although counsel argues that he made a strategic decision that the stipulation would be the best way to minimize the "negatives" concerning Barnes' physical condition, including discussion of some of Barnes' past physical activities, counsel could not have made an *informed* strategic decision without making further inquiry into available information.

Had Barnes' counsel talked to Dr. Waring, he would have discovered that it would have been difficult, if not impossible,

for Barnes physically to commit the crime as described in the testimony. For example, the victim described the intruder as "running away" and she testified that she saw him "run" down the stairs. The victim's mother also testified that she didn't get a look at him or catch him because he was "so fast." Additionally, in the initial report given to the police, the victim did not mention a limp, altered gait or leg brace, despite the fact that the medical evidence shows that Barnes' gait is noticeably awkward. If the victim watched her assailant retreat down the hallway, go down the stairs and out the door as she says she did, the extremely abnormal gait or limp should have been obvious and noteworthy. Presentation of medical evidence that Barnes could not have "run away" as described or that his gait would have been very distinctive would have cast doubt on the victim's testimony. Investigating this situation thoroughly was essential to a constitutionally adequate defense. That did not happen.

To establish a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must demonstrate that counsel's representation fell below "an objective standard of reasonableness" and that the defendant was prejudiced by the ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. *Strickland* specifically addresses the duty to investigate all aspects of a client's case, stating that strategic decisions can occur only after counsel makes a "thorough investigation of law and facts relevant to plausible options." *Id*. at 690. A decision not to investigate cannot be deemed reasonable it if is uninformed. *Id*. at 691. In short, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." The holding in *Strickland* concerning counsel's duty to investigate a defendant's background was reaffirmed in the Supreme Court's recent

decision in *Wiggins v. Smith*, 123 S. Ct. 2527, 2535 (2003), where the Court explained that *Strickland* "defined the deference owed such strategic judgments in terms of the adequacy of the investigations supporting those judgments" and emphasized that the focus in failure to investigate claims is "whether the investigation supporting counsel's decision . . . was itself reasonable." *Id*. This kind of investigation simply did not occur.

The second prong under *Strickland* requires us to examine whether counsel's deficient performance prejudiced defendant. A defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A defendant must demonstrate that "counsel's errors were serious enough to deprive [him] of a proceeding the result of which was reliable." *Glenn v. Tate*, 71 F.3d 1204, 1210 (6th Cir. 1995). Barnes was clearly prejudiced by his counsel's failure to investigate his medical condition and present evidence of that condition when it would have likely raised a reasonable doubt about Barnes' guilt. For the foregoing reasons, I respectfully dissent.