**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0281n.06
Filed: April 15, 2009

**No. 06-5532**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| EDMUND ZAGORSKI, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| RICKY BELL, Warden, | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Respondent-Appellee. | ) | |

Before: COLE, COOK, and GRIFFIN, Circuit Judges.

COOK, Circuit Judge. Edmund Zagorski appeals the denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We granted his application for a certificate of appealability, certifying five claims for review: (1) whether the prosecution improperly withheld evidence that someone else murdered Zagorski's alleged victims; (2) whether the prosecution improperly withheld evidence that it did not reinstate prosecution witness Jimmy Blackwell's suspended sentence; (3) whether the trial court improperly admitted statements that Zagorski made to police; (4) whether the trial court gave an erroneous jury instruction concerning malice; and (5) whether Zagorski's counsel provided ineffective assistance by failing to investigate and present mitigating evidence. We affirm the district court's denial of relief.

1

I.

A Tennessee grand jury indicted Zagorski for murdering John Dale Dotson and Jimmy Porter. A jury found him guilty of first-degree murder and, concluding that aggravating circumstances outweighed any mitigating factors, imposed a death sentence. The Supreme Court of Tennessee affirmed the convictions and sentence. *State v. Zagorski*, 701 S.W.2d 808 (Tenn. 1985).

Zagorski sought post-conviction relief in state court, but the court denied relief and the Tennessee appellate courts affirmed that decision. *Zagorski v. State*, No. 01C01-9609-CC-00397, 1997 WL 311926, at *20 (Tenn. Crim. App. June 6, 1997), *aff'd*, 983 S.W.2d 654, 661 (Tenn. 1998). Zagorski then sought a writ of habeas corpus in federal district court. He alleged a variety of constitutional errors, but the court denied the petition and refused to certify any claims for appeal. We certified five claims for review upon Zagorski's application for a certificate of appealability.

II.

We review de novo the district court's denial of the habeas petition and examine its factual findings for clear error. *Davis v. Coyle*, 475 F.3d 761, 766 (6th Cir. 2007). Zagorski's petition is subject to the requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because he filed it after April 24, 1996. *See Carter v. Mitchell*, 443 F.3d 517, 524 (6th Cir. 2006). Accordingly, he may not obtain relief unless the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2). An adjudication is "contrary" to federal law when the court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on . . . materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). And "[a] state court unreasonably applies Supreme Court precedent 'if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular prisoner's case.'" *Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003) (quoting *Williams*, 529 U.S. at 407). Pursuant to 28 U.S.C. § 2254(e)(1), we presume that a state court's factual findings are correct unless rebutted by clear and convincing evidence. *See Sinkfield v. Brigano*, 487 F.3d 1013, 1016 (6th Cir.), *cert denied*, 128 S. Ct. 401 (2007).

III.

A.      Withheld Evidence

Zagorski contends that the prosecution denied him a fair trial, violating the rule established in *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding three pieces of information: (1) Jimmy Blackwell killed another person in a manner similar to the way that Dotson and Porter died; (2) another individual, Buddy Corbett, had a motive to kill one of the victims; and (3) the prosecutor did

3

not reinstate Blackwell's suspended sentence although clear evidence indicated Blackwell's involvement in selling 25 pounds of marijuana.

As a threshold matter, we note that Zagorski's *Brady* claim is procedurally defaulted. A state prisoner "must exhaust his remedies in state court" before a federal court may grant habeas relief. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). But because this exhaustion requirement applies only to remedies available at the time of the federal petition, a petitioner can satisfy it by showing that the claims "are now procedurally barred under [state] law." *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). Tennessee law barred Zagorski from returning to state court to pursue his *Brady* claim because it limits an inmate to only one post-conviction petition, Tenn. Code. Ann. § 40-30-102(c), and because "[a] claim that the State suppressed or failed to disclose exculpatory evidence in violation of *Brady* simply is not one of the statutory grounds for reopening a post-conviction proceeding." *Harris v. State*, 102 S.W.3d 587, 591 (Tenn. 2003). Accordingly, Zagorski's failure to present his *Brady* claim in state court resulted in its default.

To excuse his default, Zagorski must establish "that (1) he had good cause for failing to raise [the claim] before the state courts and (2) he was prejudiced by the default." *Henley v. Bell*, 487 F.3d 379, 388 (6th Cir. 2007), *cert. denied*, 128 S.Ct. 2962 (2008). An exception exists for petitioners who demonstrate that failure to review the merits of their defaulted claim would result in a "fundamental miscarriage of justice." *Scott v. Mitchell*, 209 F.3d 854, 872–73 (6th Cir. 2000). The

4

elements of the cause-and-prejudice test overlap with those necessary to sustain a *Brady* claim—a petitioner "must show that (1) evidence favorable to the petitioner, whether exculpatory or for impeachment purposes (2) was suppressed by the government, and (3) the petitioner suffered prejudice as a result." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). Zagorski may satisfy the cause-and-prejudice test by showing "that 'the reason for [the petitioner's] failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence,' and that 'the suppressed evidence is 'material' for *Brady* purposes.'" *Henley*, 487 F.3d at 388. To be material, and therefore prejudicial, there must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Apanovitch*, 466 F.3d at 475.

Turning to the first of Zagorski's claims, he avers that the prosecution withheld information that Blackwell killed an individual named Harry McKinney in an almost identical manner to the way Dotson and Porter died. We will not address this sub-claim because this court did not certify that particular issue for review. *See Cooey v. Coyle*, 289 F.3d 882, 887 (6th Cir. 2002) ("Under the AEDPA, an appeal from the denial of a writ of habeas corpus may not be taken unless a circuit justice or judge issues a certificate of appealability.").

With regard to Zagorski's second claim, that the prosecution withheld evidence that Buddy Corbett had a motive to kill at least one of the victims, we will not grant relief because Zagorski's trial counsel had reason to know the essential facts underlying this claim. *Brady* "does not assist a

5

defendant who is aware of essential facts that would allow him to take advantage of the exculpatory evidence . . . ." *Coleman v. Mitchell*, 268 F.3d 417, 438 (6th Cir. 2001). Zagorski's trial counsel knew that others had a motive to kill the victims. In fact, he relied on that theory at trial when he argued that Zagorski did not know the killers: "[B]ecause there were other people involved. And my opinion was he was almost the fall man for these people . . . ." The Tennessee Supreme Court's factual findings likewise support the view that Zagorski's attorney should have known: "In statements made on July 27 and August 1, 1983, Zagorski claimed he was hired to kill Porter but that Dotson's death was a mistake. He also said that two other men had been hired to kill Porter . . . ." *Zagorski*, 701 S.W.2d at 811.

Regarding Zagorski's third *Brady* claim, that the prosecution failed to disclose Blackwell's alleged involvement in a drug deal following the murders, despite Blackwell's testimony that he declined involvement because he was on probation from a previous misdemeanor drug conviction, we find this claim procedurally defaulted. Although Zagorski demonstrated cause for the default—the prosecution should have disclosed this information as potential impeachment evidence—he does not demonstrate prejudice because the evidence is not material for *Brady* purposes. *See Henley*, 487 F.3d at 388. Zagorski did not show any agreement between Blackwell and the prosecution, or that they exchanged any consideration for his testimony. His speculation that Blackwell and other witnesses "may have received consideration for their testimony . . . which was never revealed to the defense" does not create "a reasonable probability that, had the evidence been

6

disclosed to the defense, the result of the proceeding would have been different." *Apanovitch*, 466 F.3d at 475.

B.      Admission of Custodial Statements

Zagorski contends that the trial court erred in admitting statements that he made to police on three occasions—June 1, July 27, and August 1, 1983—after he invoked his rights to silence and to counsel. The Tennessee Supreme Court found that although Zagorski invoked his right to counsel, "the evidence supports the trial court's finding that the defendant initiated the interrogations, that he was not subject to any coercive action . . . and that he knowingly and intelligently waived his right . . . ." *Zagorski*, 701 S.W.2d at 812. We deny relief because this conclusion was neither "contrary to" federal law, nor an "unreasonable application" of Supreme Court precedent.

Although Zagorski challenges statements made on three dates, we focus on the latter two—July 27 and August 1. We need not address the June 1 statement; even assuming that the trial court should have suppressed it, the error was harmless if the subsequent inculpatory statements were admissible. *See Coomer v. Yukins*, 533 F.3d 477, 488 n.4 (6th Cir. 2008) (citing *Arizona v. Fulminante*, 499 U.S. 279, 295 (1991)). Consequently, admission of the June 1 statement could not have had a "substantial and injurious effect in determining the jury's verdict." *Id.*

The crucial conversations occurred on July 27 and August 1, when detective Ronnie Perry spoke with Zagorski. Perry received two notes from Zagorski on July 22, stating that Zagorski

"need[ed] to see the Sheriff or Ron Perry, Ed Z, or E.D.Z." Perry recounted the following

conversation from his July 27 visit to Zagorski:

> So I went back down to the jail and went in the lower cell block into Ed's cell and
> asked him what he needed. He asked me, said, what's going to happen today? I said,
> well, we've got to show proof, and then it will probably be bound over to the Grand
> Jury. He said, are my lawyers going to be there? I said, yes. He said, well, I'll tell
> you what I'll do—if you'll let me pick the type of execution and the day of execution,
> I'll confess to these murders. I told him, I said, look, man, you need to stop right here
> and go talk to your lawyers; don't be doing stuff like this right now. He said, well,
> he didn't need to talk to his lawyers; he knowed [sic] what he wanted to say. I said,
> well, I think you need to talk to them.

After this exchange, Zagorski told Perry that the murders occurred in Hickman County and Boiling

Springs. Perry did not ask any questions, but the men spoke again two days later, at Zagorski's

insistence. Perry recalled:

> [Zagorski] said that he wasn't the trigger man in the murders, but he did have
> something to do with them. He said that he just set them up; said he was hired by a
> man from—no, it was a man from Florida that was the trigger man, and all he done
> was drove them to the spot in Boiling Springs. He got out of the car, Porter and
> Dotson got out of the car, and they were shot.

Zagorski also told him that the bodies were placed in plastic bags and transported to Robertson

County; that his role was to "set the murders up"; that Dotson's murder was a mistake because he

had been hired to kill only Porter; and that it took about five seconds to kill both men. Perry asked

only one question—to confirm that Zagorski wanted to speak with him.

Zagorski contends that these exchanges were inadmissible because they resulted from "coercive police activity." *See Jackson v. McKee*, 525 F.3d 430, 433. Namely, he alleges that he made the statements because he had been incarcerated under oppressive conditions, kept in isolation, and deprived of exercise or sunlight. But the need for security prompted Zagorski's confinement, not coercion. Sheriff Emery testified that Zagorski attempted suicide by overdosing on medication obtained from other prisoners and that he attempted to escape (and injured himself in the process) on another occasion. Moreover, Zagorski requested to speak with Detective Perry on his own initiative and insisted on confessing even though the detective advised him to speak with his lawyer first.

An accused, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). But the accused's statement may be admitted nevertheless if an *Edwards* initiation occurs; that is, the statement is admissible "when, without influence by the authorities, the suspect shows a willingness and a desire to talk generally about his case." *United States v. Whaley*, 13 F.3d 963, 967 (6th Cir. 1994). Zagorski did not just express a voluntary willingness "to talk generally about his case"—he insisted on giving Detective Perry specific details. As a result, the state court decision was neither contrary to, nor involved an unreasonable application of clearly established Federal law. Moreover, Zagorski cannot demonstrate that the admission of his June 1 statement was not harmless error. *See Kyger v. Carlton*, 146 F.3d

374, 382–83 (6th Cir. 1998) (holding that the admission of a statement obtained in violation of

*Miranda v. Arizona*, 384 U.S. 436 (1966), resulted in harmless error because the defendant repeated

the substance of the statement in a later admissible statement).

C.      Jury Instruction on Malice

Zagorski contends that the trial court provided the jury with an unconstitutional instruction

on malice, shifting the burden of proof from the prosecution to the defense.  But this claim is

procedurally defaulted because Zagorski failed to raise it before the state court and he neither  shows

cause or prejudice, nor that a miscarriage of justice will result from enforcing the default.  *Broom*

*v. Mitchell*, 441 F.3d 392, 401 (6th Cir. 2006) (citing *Seymour v. Walker*, 224 F.3d 542, 549–50

(2000)).

Zagorski proffers two reasons to find that he did not default his claim.  First, he argues that

the Tennessee Supreme Court exhaustively reviewed the record for *all* possible claims: "the [court]

expressly stated that '[a]fter consideration of . . . the entire record,' it found 'no reversible error . .

. committed at trial.'"  This mischaracterizes the Tennessee Supreme Court's review; it examined

the record pertaining to the issues Zagorski raised, but those claims he did not present remain

defaulted.  *See Baldwin v. Reese*, 541 U.S. 27, 31 (2004) (a petitioner does not "fairly present" a

federal claim to a state court for exhaustion purposes if the court must look beyond a petition or brief

to find material alerting it to the claim).  Second, Zagorski advances a perfunctory equal-protection

challenge that the procedural default violates the Fifth Amendment.  This claim is without merit; we

have held that the state procedural rules implicated by procedural default are firmly established and regularly enforced. *See, e.g.*, *Harbison v. Bell*, 408 F.3d 823, 832–33 (6th Cir. 2005) (statute of limitations), *rev'd on other grounds*, 556 U.S. __ (2009); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998) (waiver).

Finding that Zagorski's jury instruction challenge is procedurally defaulted, we turn to his last argument.

D.      Ineffective Assistance of Counsel

Finally, Zagorski advances an ineffective-assistance-of-counsel argument.[1] He contends that trial counsel rendered ineffective assistance by failing to investigate and present evidence of his troubled childhood and brain damage during the penalty phase—notwithstanding Zagorski's express request not to present a mitigation case. The Tennessee Supreme Court rejected this argument, concluding that "[c]ounsel fulfilled their role as advocates for the petitioner and were not ineffective in abiding by his informed decision to forego the use of mitigating evidence." *Zagorski*, 983 S.W.2d at 659. We conclude that the state court's rejection of Zagorski's ineffective assistance claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

---

[1]Zagorski contends that his trial counsel also rendered ineffective assistance by "fail[ing] to argue the available mitigating factors about the offense solely because counsel mistakenly believed that such argument was prohibited." This court did not certify this claim for appellate review, so we do not address it. *See Cooey*, 289 F.3d at 887.

11

To demonstrate ineffective assistance, Zagorski "must show that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *Keith v. Mitchell*, 455 F.3d 662, 670 (6th Cir. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  He can demonstrate deficient performance by showing "'that counsel's representation fell below an objective standard of reasonableness', as judged by 'prevailing professional norms.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 769–70 (6th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687–88).  As for establishing prejudice, Zagorski must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  In the death sentence context, we ask "whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."  *Id.* at 695.

In assessing trial counsels' effectiveness, we note that their efforts to present a mitigation argument encountered intractable obstacles.  They "vigorously defended [Zagorski] during the guilt phase of the trial," *Zagorski*, 983 S.W.2d at 659, but Zagorski told them that "if he was convicted of first-degree murder he wanted to go to the electric chair.  He did not want life in prison." Zagorski also instructed his counsel not to contact his family to pursue mitigation evidence, despite counsel's warnings that his decision would produce "potentially devastating consequences."  *Id.* Notwithstanding, counsel contacted Zagorski's mother, but that interaction produced little useful information.  Counsel also retained a mental health expert, Dr. Bursten, but decided not to present

12

that testimony after the doctor advised that he would testify that Zagorski was competent, ineligible for an insanity defense, and that "he would explain that [Zagorski] could be a 'mean person.'" *Id.*

We have recognized that "the Constitution requires defense counsel to conduct a reasonable investigation into the defendant's background and present it to the jury," *Byrd v. Collins*, 209 F.3d 486, 526 (6th Cir. 2000), and that failure to do so may constitute ineffective assistance of counsel, *Poindexter v. Mitchell*, 454 F.3d 564, 577 (6th Cir. 2006). Nonetheless, we find counsel's performance reasonable under the circumstances. Zagorski's counsel did investigate, seeking mitigation evidence from Dr. Bursten and Zagorski's mother. That they failed to investigate beyond these failed avenues does not render their performance deficient; "counsel's performance will not necessarily be deficient because of a failure to investigate, so long as counsel's decision not to investigate is reasonable under the circumstance." *Hawkins v. Coyle*, 547 F.3d 540, 548 (6th Cir. 2008). Zagorski has presented no reason to label his counsel's efforts as anything other than reasonable, especially given his insistence—despite being advised against and understanding the consequences—that counsel not present mitigation evidence.

Given trial counsels' reasonable efforts, we conclude that the Tennessee Supreme Court's decision was neither contrary to nor an unreasonable application of Supreme Court precedent. Our conclusion follows the Supreme Court's recent determination in *Schriro v. Landrigan*, 550 U.S. 465 (2007). The *Schriro* Court examined a state court's finding that a criminal defendant who did not want his trial counsel to present mitigation evidence, like Zagorski, did not receive ineffective

13

assistance of counsel. The Court held that the state court's conclusion was not an unreasonable determination of the facts and denied the ineffective assistance claim notwithstanding the presentation of mitigation evidence in post-conviction proceedings. *Id.* at 480–81. This circuit acknowledges that "*Schriro* mirrors cases from our own circuit that have held that a client who interferes with her attorney's attempts to present mitigating evidence cannot then claim prejudice based on the attorney's failure to present that evidence." *Owens v. Guida*, 549 F.3d 399, 406 (6th Cir. 2008).

IV.

We affirm the district court's denial of Zagorski's petition for a writ of habeas corpus.