NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0685n.06

No. 19-1733

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 08, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CURTIS SCOTT, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

Before: GUY, CLAY, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. A federal jury convicted Curtis Scott of aiding and abetting a carjacking, aiding and abetting the use or carry of a firearm during a crime of violence, and lying to an FBI agent. Scott now presents a raft of arguments as to why we should vacate his convictions on various grounds. We reject all his arguments and affirm.

I.

Early one morning in November 2013, Curtis Scott drove around Detroit looking to steal a Mercury Grand Marquis—a type of vehicle that Scott himself already owned. Scott was 35 years-old then, but was joined by three teenagers: Roland Hubbard, Paijah McCloud, and Dexavior Evans. Eventually Scott spotted a Grand Marquis and began to follow it.

The Grand Marquis's driver, Clever Loudd, eventually parked at a high school where he worked. Scott pulled over a block away, gave a revolver to Evans and a cellphone to Hubbard, and told them to go get the car.

Evans approached the passenger-side door of Loudd's car, Hubbard the driver's side. Loudd looked up to see Hubbard pointing the gun at him. Loudd stepped out of the car, Hubbard fired the gun into the air, Loudd ran away, and Hubbard fired the gun into the air again. Then Hubbard and Evans got into the Grand Marquis and followed Scott, who gave Hubbard directions over the phone.

Local police began pursuing the Grand Marquis. A chase ensued, and the teens ditched the car on a street corner and ran. Hubbard dropped the phone Scott had given him, but Evans picked it up. The police caught Hubbard, but Evans got away. Scott retrieved the phone from him the next day.

An FBI agent, Jeff Jacobs, and a Michigan Department of Corrections officer, Matthew Wieas, soon visited Scott at a laundromat where he worked. They asked Scott about the carjacking and about the cellphone used during it. Scott said he didn't have the phone but that it might be at Hubbard's house. The group then rode to the house in the officers' vehicle, but the front door was locked and no one answered their knocks. The officers later listened to a recording of a call Hubbard had made from jail to Scott, and they realized that Scott had lied to them about Hubbard's phone. Meanwhile, police arrested Evans for an unrelated crime, and he told the officers that Scott had led the carjacking.

A grand jury thereafter indicted Scott on three counts: aiding and abetting a carjacking, in violation of 18 U.S.C. § 2119 and § 2; aiding and abetting the discharge of a gun in furtherance of a carjacking, in violation of 18 U.S.C. § 924(c) and § 2; and lying to an FBI agent, in violation of 18 U.S.C. § 1001.

Scott moved to suppress his statements to the officers; the district court held an evidentiary hearing and denied the motion. The court also denied a motion by Scott to sever the false-statement

count from the carjacking ones. A jury convicted Scott on all three counts and the district court denied a motion by Scott for a new trial. The court thereafter sentenced Scott to 180 months' imprisonment. This appeal followed.

## II.

### A.

Scott challenges the district court's denial of his motion to suppress. We review the district court's legal conclusions de novo and its findings of fact for clear error, viewing the evidence in the light most favorable to the court's decision. *See United States v. Ellis*, 497 F.3d 606, 611 (6th Cir. 2007).

Scott argues that the officers coerced him to speak with them when they visited him at the laundromat. Whether the officers coerced Scott depends on whether their conduct "critically impaired" his "capacity for self-determination[.]" *Loza v. Mitchell*, 766 F.3d 466, 477 (6th Cir. 2014). The district court held they had not, choosing to credit the officers' testimony that their conversation with Scott had been "cordial," that Scott had not seemed upset or nervous, that Scott had volunteered to ride with them to Hubbard's house, and that Scott had offered to break down the front door for them. Scott himself testified during the hearing that that the officers had confronted him and threatened to take him to jail if he did not cooperate. But we have no reason to revisit the district court's credibility determination on the record here, which means that Scott's coercion argument fails. *See Barnes v. Elo*, 339 F.3d 496, 500-01 (6th Cir. 2003).

Scott also contends that the officers should have given him *Miranda* warnings. But Scott himself conceded in the district court that he was not in the officers' custody, *see* R. 41, PID 452, which means he cannot claim error on that basis. *See United States v. Demmler*, 655 F.3d 451, 458-59 (6th Cir. 2011).

B.

Scott argues that the district court should have granted his motion to sever the false-statement count from the carjacking ones.  We review the district court's denial of that motion for an abuse of discretion.  *See United States v. Cody*, 498 F.3d 582, 586 (6th Cir. 2007).

Scott's burden is to show that the joinder of his counts at trial caused him "specific substantial, undue, or compelling prejudice."  *United States v. Maddux*, 917 F.3d 437, 449 (6th Cir. 2019).  To that end, Scott contends evidence of his lie to the officers about the phone's whereabouts would have been inadmissible in a carjacking-only trial.  But that evidence was the least of Scott's problems in the trial here, where the government introduced evidence that Scott orchestrated the carjacking from start to finish.  Scott likewise asserts that evidence of his involvement in the carjacking would be inadmissible in a trial on the false statement alone.  That contention is meritless too, because the government could have admitted evidence as to *why* he lied about possessing the phone (*i.e.*, that he had used the phone during a carjacking).  The district court did not abuse its discretion in denying the motion to sever.

C.

Scott also challenges the district court's jury instruction with respect to the charge that he aided and abetted Hubbard's "discharge" of the revolver during the carjacking.  Specifically, Scott argues that the court should have instructed the jury that, to convict on this count, they must have found that Scott intended that Hubbard fire the gun during the carjacking.

We review the court's instruction for an abuse of discretion.  *United States v. Pritchard*, 964 F.3d 513, 522 (6th Cir. 2020).  An aider and abettor is responsible for the criminal conduct of the person he assists.  *See Rosemond v. United States*, 572 U.S. 65, 78 (2014).  And the offense of discharging a firearm in violation of § 924(c) "requires no separate proof of intent."  *Dean v.*

*United States*, 556 U.S. 568, 577 (2009). Here, so far as § 924(c) was concerned, Hubbard's criminal conduct was complete once he fired the revolver (twice) into the air during the carjacking. No proof of intent was required. *Id*. And because Scott gave Hubbard the revolver for the very purpose of the carjacking, Scott's liability under § 924(c) was complete then too. The district court's instruction was proper.

D.

Scott argues that the district court abused its discretion with regard to the verdict form for the § 924(c) count. We again review the district court's ruling for an abuse of discretion. *See United States v. Kimes*, 246 F.3d 800, 810 (6th Cir. 2001).

Here, the indictment stated that Scott "did intentionally use, carry, brandish and discharge a firearm[,]" for purposes of § 924(c), because he aided and abetted Hubbard in doing so. The district court's verdict form for this count first asked the jury whether Scott had aided and abetted "the use and/or carrying of a firearm;" if the jury answered yes, the form then asked the jury whether Scott had also aided and abetted "the act of discharging a firearm" or "the act of brandishing a firearm." The jury could answer yes or no to each of those follow-up questions.

Scott's complaint about the form is hard to follow but seems to boil down to a contention that the verdict form should have asked whether he aided or abetted the "carrying" *or* "brandishing" *or* "discharging" of the firearm. The reason, Scott says, is that "carrying" a firearm is a lesser-included offense of brandishing or discharging the firearm. But from that premise no legal conclusion follows. Scott says that his formulation would have allowed the jury to convict "on any theory contained in the indictment." But the court's verdict form accomplished precisely the same end. The two formulations each allowed the jury to separate findings as to "use," "brandish," and "discharge." The district court did not abuse its discretion.

E.

Scott argues that his trial counsel rendered constitutionally ineffective assistance at trial. The district court denied this claim after holding an evidentiary hearing. The record here is therefore adequate to review that decision. *See United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000). In doing so, we review the court's factual findings for clear error and its legal conclusions de novo. *See United States v. Munoz*, 605 F.3d 359, 366 (6th Cir. 2010).

Scott's claim in the district court (which Scott litigated pro se) failed on its first prong, namely whether his counsel's "representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Here, Scott argues in largely conclusory terms that his counsel was ineffective in several ways. First, Scott says that—to rebut the government's theory that he wanted another Grand Marquis as a source of spare parts for his own car—counsel should have introduced expert testimony that the parts on Loudd's 2006 car were not interchangeable with those on his 1996 car. But suffice it to say here that some of the parts would have been interchangeable. Second, Scott says that counsel could have presented text messages showing that Evans threatened him, which Scott suggested would have undermined the claim that Scott manipulated Evans into committing the carjacking. But counsel testified that those same text messages showed that Evans envied the attention Scott paid Hubbard—which could have underscored that Scott manipulated Evans.

Scott's remaining contentions as to this claim are barely developed. Suffice it to say that he has not demonstrated constitutionally ineffective assistance at trial.

\* \* \*

The district court's judgment is affirmed.